# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE E. GOMEZ,<br><br>               Plaintiff,<br><br>v.<br><br>TOWN OF WEST NEW YORK, NEW JERSEY; et al.<br><br>               Defendants. | Case No. 2:25-cv-02242 (JXN) (CLW)<br><br><br><br>**Return Date: December 15, 2025** |

---

**DEFENDANTS TOWN OF WEST NEW YORK, ALBIO SIRES, JAVIER BAEZ, MARIELKA DIAZ AND KELLY SCHWEITZER'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

**TAYLOR LAW GROUP, LLC**
Lester E. Taylor, III, Esq., Atty. ID# 000022001
Christopher J. Buggy, Esq., Atty ID# 066242013
Micheaux A.D. Ferdinand, Esq. Atty ID# 481102025
430 Mountain Avenue, Suite 103
New Providence, New Jersey 07974
(908) 219-7771
ltaylor@taylorlawgroupllc.com
cbuggy@taylorlawgroupllc.com
mferdinand@taylorlawgroupllc.com
Attorneys for Defendants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

POINT I

LEGAL STANDARD ................................................................................................... 4

POINT II

THE COMPLAINT FAILS TO ALLEGE ANY CONDUCT AT ALL AS TO
MAYOR SIRES OR COMMISSIONER DIAZ ............................................................ 5

POINT III

EACH OF THE COUNTS AGAINST THE INDIVIDUAL DEFENDANTS
SHOULD BE DISMISSED ........................................................................................... 7

      A.     The Complaint Fails to State A Claim Against the Individual
            Defendants For Retaliation Under 42 U.S.C. § 1983 ................................ 7

           1.   Plaintiff Did Not Engage In Constitutionally Protected Conduct ..................... 8

           2.   Plaintiff Fails To Plausibly Allege Any Facts Regarding
              A Causal Link Between His Constitutionally Protected
              Conduct And His Termination ...................................................... 10

      B.     The Individual Defendants are Immune From Liability Under The
            Doctrine of Qualified Immunity .......................................................... 12

POINT IV

THE CONCLUSORY AND BAREBONES ALLEGATIONS IN THE
COMPLAINT FAIL TO STATE A MONELL CLAIM AGAINST WNY ................................. 14

      A.     Policy, Practice, or Custom ................................................................... 15

POINT V

PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY IS MERITLESS ....................................... 18

CONCLUSION ............................................................................................................ 19

## TABLE OF AUTHORITIES

**Case:**                                                                                 **Page(s):**

Ashcroft v. Iqbal,
          556 U.S. 662 (2009)...........................................................................................4, 5, 6

Ambrose v. Twp. of Robinson, PA,
          303 F.3d 488 (3d Cir. 2006).....................................................................................9

Bell Atl. Corp. v.  Twombly,
          550 U.S. 544 (2007)...............................................................................................4, 5

Bergin v. Teamsters Local Union No. 77,
          2011 WL 486230 (Feb. 4, 2011)..............................................................................5

Board of Educ., Asbury Park v. Hoek,
          38 N.J. 213 (1962) .................................................................................................17

Brown ex rel. Brown v. Philip Morris, Inc.,
          228 F. Supp. 2d 506 (D.N.J. 2002) .......................................................................17

Brown v. State,
          230 N.J. 84 (2017) .................................................................................................12

Brown v. Trench,
          787 F.2d 167 (3d Cir. 1986).....................................................................................8

Cherry v. Borough of Tuckerton,
          2016 WL 6080813 (D.N.J. Oct. 17, 2016)........................................................7, 18

City of Canton v. Harris,
          489 U.S. 378 (1989)...............................................................................................14

Connick v. Myers,
          461 U.S. 138 (1983)...............................................................................................14

County Concrete Corp. v. Town of Roxbury,
          442 F.3d 159 (3d Cir. 2006)...................................................................................18

Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.,
          519 F. Supp. 3d 178 (D.N.J. 2021) .........................................................................4

Eisenbrey v. Wal-Mart East, LP,
          2024 WL 4712833 (D.N.J., November 7, 2024) .....................................................5

EPEC Polymers, Inc v. NL Industries, Inc.,
          2013 WL 2338711 (D.N.J., May 28, 2013) ............................................................5

Falco v. Zimmer,
    767 F. App'x 288 (3d Cir. 2019) ......................................................................7

Flood v. Sherk,
    400 F.Supp.3d 295 (3d Cir. 2019) ..................................................................16

G.D. v. Kenny,
    411 N.J. Super. 176 (App. Div. 2009) ............................................................17

Galli v. New Jersey Meadowlands Comm'n,
    490 F.3d 265 (3d Cir. 2007)...........................................................................8

Gormley v. Wood-El,
    218 N.J. 72 (2014) ......................................................................................12

Grazier ex. Rel. White v. City of Philadelphia,
    328 F.3d 120 (3d Cir. 2003)...........................................................................15

Hill v. Borough of Kutztown,
    455 F.3d 225 (3d Cir. 2006)....................................................................7, 15, 16

Krouse v. American Sterilizer Co.,
    126 F.3d 494 (3d Cir. 1997)...........................................................................11

Lauren W. ex rel. Jean W. v. DeFlaminis,
    480 F.3d 259 (3d Cir. 2007)...........................................................................10

McKee v. Hart,
    436 F.3d 165 (3d Cir. 2006)...........................................................................9

Mitchell v. Forsyth,
    472 U.S. 511 (1985).....................................................................................13

Monell v. Dept. of Soc. Servs. of City of New York,
    436 U.S. 658 (1978)..............................................................................3, 14, 15

Morse v. Lower Merion Sch. Dist.,
    132 F.3d 902 (3d Cir. 1997)...........................................................................4

Mulholland v. Gov't City of Berks, PA,
    706 F.3d 227 (3d Cir. 2013)...........................................................................15

Munroe v. Central Bucks School Dist.,
    805 F.3d 454 (3d Cir. 2015)...........................................................................7

Natl. Rifle Assn. of Am. v. Vullo,
    602 U.S. 175 (2024)............................................................................................4

Pearson v. Callahan,
    555 U.S. 223 (2009)..............................................................................12, 13, 14

Pembaur v. Cincinnati,
    475 U.S. 469 (1986)..........................................................................................16

Robinson v. City of Pittsburgh,
    120 F.3d 1286 (3d Cir. 1997)..........................................................................11

Saucier v. Katz,
    533 U.S. 194 (2001)..................................................................................13, 14

Thomas v. Town of Hammonton,
    351 F.3d 108 (3d Cir. 2003)..........................................................................9, 10

Wilson v. City of Philadelphia,
    177 F. Supp. 3d 885 (3d Cir. 2016) .................................................................14

**Statutes, Rules and Other Authorities**

42 U.S.C. § 1983........................................................................................... passim

N.J.S.A. 10:6-1....................................................................................................3

N.J.S.A. 59:1-1..................................................................................................15

N.J.S.A. 59:8-8..................................................................................................18

Fed. R. Civ. P. 12(b)(6)............................................................................... passim

## PRELIMINARY STATEMENT

Plaintiff Jorge E. Gomez's Complaint (ECF No. 1) is a textbook example of a fishing expedition, bare conclusions failing to provide any factual "meat on the bones".  When stripped of speculation, the Complaint fails to adequately allege any cause of action against Defendants Town of West New York ("WNY"), Albio Sires ("Mayor Sires"), Luis Baez ("Mr. Baez"), Marielka Diaz ("Commissioner Diaz") and Kelly Schweitzer ("Ms. Schweitzer") (collectively, the "WNY Defendants") or any facts showing that any of the WNY Defendants engaged in unconstitutional or otherwise unlawful conduct.  A plaintiff is required to provide more than conclusory statements and broad, generalized allegations – which Plaintiff clearly did not do.

Additionally, Plaintiff fails to plausibly allege any facts linking Mayor Sires or Commissioner Diaz to any alleged retaliatory or conspiratorial conduct.  Moreover, Plaintiff's claims fail because the individual WNY Defendants are entitled to qualified immunity.  Plaintiff's allegations demonstrate that Plaintiff's position as Recreation Director entailed supervisory and policymaking responsibilities, even if otherwise, the allegations still fail to adequately allege or provide any causal connection between Plaintiff's political activities and any employment action.

Further, Plaintiff's claims for municipal liability against WNY are equally deficient as his claims against the individual WNY Defendants. The Complaint identifies no policy, custom, or official act attributable to WNY that could support a claim for liability under <u>Monell v. Dept. of Soc. Servs. Of City of New York</u>. Lastly, Plaintiff's civil conspiracy claim is not only duplicative of his other substantive claims, it is legally meritless because a separate cause of action for civil conspiracy does not exist under New Jersey law and even if it did, this claim must be dismissed due to Plaintiff's failure to comply with the New Jersey Tort Claims Act.

In short, Plaintiff's Complaint offers nothing more than generalized "defendants harmed

me" conclusions – perceived grievances curiously recast as constitutional violations. Due to the glaring and incurable deficiencies in the Complaint, the WNY Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) should be granted and the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

On or about April 2, 2025, Plaintiff filed a four-count complaint (ECF No. 1) alleging retaliation for constitutionally protected speech or expression under 42 U.S.C. § 1983 against Mayor Sires, Commissioner Diaz, Administrator Baez and Ms. Schweitzer (First Count); a claim for liability against WNY under Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658 (1978) (Second Count); common law civil conspiracy to violate civil rights against Mayor Sires, Commissioner Diaz, Administrator Baez and Ms. Schweitzer (Third Count); and retaliation for constitutionally protected speech or expression under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 ("NJCRA") against Mayor Sires, Commissioner Diaz, Administrator Baez and Ms. Schweitzer (Fourth Count). See generally ECF No. 1.

According to the Complaint, Plaintiff was employed as the Recreation Director for WNY, beginning on June 15, 2015. Id. at ¶ 11. Plaintiff alleges in February 2023, despite being instructed by former Commissioner Cosmo Cirillo ("Mr. Cirillo") to change Plaintiff's title from Recreation Director to Clerk 1, a classified position under New Jersey's Civil Service Act, Mr. Baez and Ms. Schweitzer failed to process the title change. Id. at ¶¶ 20-25. In May 2023, Plaintiff was terminated from this position replaced by a less qualified individual , shortly after the municipal election allegedly in retaliation for his political support of Mr. Cirillo, an opponent of the elected candidate Mayor Sires. Id. at ¶ 13. Plaintiff alleges these alleged retaliatory actions were directly linked to his constitutionally protected political expression and association with Mr. Cirillo's campaign. Id. at ¶ 29. As a result, Plaintiff claims to have suffered damages from the alleged deprivation of his First Amendment rights. See generally ECF No. 1.

# LEGAL ARGUMENT

## POINT I

## LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court conducts the following three-part analysis:

> (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co., 519 F. Supp. 3d 178, 181 (D.N.J. 2021) (citing Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011)). The second part of the analysis requires the court to accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the non-moving party's favor. Nat'l Rifle Assn. of Am. v. Vullo, 602 U.S. 175, 181 (2024) (citing Iqbal, 556 U.S. at 678-79). However, unsupported conclusions or assertions and mere recitation of the elements of a cause of action are insufficient to survive dismissal. Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Additionally, the court need not accept legal conclusions, bald assertions, or unwarranted factual inferences as true. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996))). Although compliance with the Rule 8 standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555)). Complaints must be

dismissed where they offer "labels or conclusions", "formulaic recitations of the elements of a cause of action", or state naked assertions "devoid of further factual enhancement." Id.  Put simply, the "doors of discovery" will not be unlocked for "a plaintiff armed with nothing more than conclusions".  Id.; see also Eisenbrey v. Wal-Mart East, LP, 2024 WL 4712833, *7 (D.N.J. Nov. 7, 2024) (noting a plaintiff may not "use discovery 'to conduct a fishing expedition' to search for the facts necessary to establish a legally adequate complaint.") (citing Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 204 (3d Cir. 2006); Bergin v. Teamsters Local Union No. 77, 2011 WL 486230, at *2 *E.D. Pa. Feb. 4, 2011)).

Under the third part of the analysis, the court must determine whether the facts alleged in the complaint are sufficient to demonstrate that the claim for relief is "plausible". In assessing plausibility, the court should "draw on its judicial experience and common sense." See EPEC Polymers, Inc v. NL Industries, Inc., 2013 WL 2338711, *2-3 (D.N.J., May 28, 2013) (citing Iqbal, 556 U.S. at 679). Dismissal is appropriate if, accepting all the facts alleged in the complaint as true, the plaintiff has failed to pleas "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When analyzed under the foregoing standard, the Complaint fails to provide any plausible allegations regarding actionable conduct by any of the WNY Defendants. Consequently, the Complaint against the WNY Defendants must be dismissed with prejudice.

## POINT II

### THE COMPLAINT FAILS TO ALLEGE ANY CONDUCT AT ALL AS TO MAYOR SIRES OR COMMISSIONER DIAZ

While the Complaint consists entirely of barebone conclusions without any particularized

factual allegations that plausibly assert claims involving any of the WNY Defendants, the "allegations" directed at Mayor Sires and Commissioner Diaz are especially deficient. As to Mayor Sires, the Complaint merely alleges that he declared candidacy for Mayor of West New York, prevailed in the election held on May 9, 2023, and was sworn into office approximately seven days thereafter. See ECF No. 1, at ¶¶ 15, 26-27. Beyond the conclusory statement that Mayor Sires "conspired", there are no specific allegations that could even support an inference that Mayor Sires retaliated against Plaintiff. Id. at ¶ 29. Although Mayor Sires is a named defendant in three out of the four counts of the Complaint, the Complaint does not allege any action taken by him with respect to Plaintiff. The only "act" attributed to Mayor Sires is the generalized assertion that he participated in a conspiracy, unsupported by any description of a meeting, conversation, directive, or other communication. These allegations are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that Iqbal instructs courts to disregard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The allegations against Commissioner Diaz are even more inadequate. Commissioner Diaz is only identified by title and described as a political supporter of Mayor Sires. See ECF No. 1, at ¶¶ 5, 7. No factual allegations within the Complaint tie any act, statement, or omission by Commissioner Diaz to Plaintiff. The Complaint lacks even minimal allegations of Commissioner Diaz's knowledge of Plaintiff's political activities or her participation in employment decisions. Plaintiff only provides generic allegations that "Mayor Sires, Baez, Diaz, and Schweitzer" engaged in retaliatory or conspiratorial conduct and fails to allege any factual basis linking Commissioner Diaz to such conduct beyond her political alignment with Mayor Sires. Id. at ¶¶ 30, 53-55.

As stated above in Point I, the plausibility standard on a Rule 12(b)(6) motion to dismiss requires more than a mere possibility of wrongdoing. Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 557). When a complaint alleges facts that are merely consistent with a defendant's potential liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. Here, the allegations offered are insufficient to plausibly allege that Mayor Sires or Commissioner Diaz engaged in any conduct that violated Plaintiff's constitutional rights. Due to the wholesale lack of any allegations of actionable conduct, the Complaint should be dismissed with prejudice as to Mayor Sires and Commissioner Diaz.

**POINT III**

**EACH OF THE COUNTS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED**

A.    **The Complaint Fails To State A Claim Against The Individual Defendants For Retaliation Under 42 U.S.C. § 1983**

According to the Complaint, between June 15, 2015 to May 16, 2023, Plaintiff was a "public servant", holding the title of Recreation Director for WNY, a government entity. See ECF No. 1, at ¶¶ 11-12, 28. Due to Plaintiff's status as a public servant, to state a First Amendment retaliation claim under 42 U.S.C. § 1983 or the NJCRA,[1] a plaintiff must allege that: (1) they engaged in constitutionally protected conduct, and (2) the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory actions. Falco v. Zimmer, 767 F. App'x 288, 299 (3d Cir. 2019) (holding the elements of a First Amendment retaliation claim differ for public employees and private citizens). See also Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). If a plaintiff satisfies the first two elements, the burden then shifts to the employer to prove that the same action would have been taken even if the conduct did not occur. Id. at 299

---

[1] Claims under 42 U.S.C. § 1983 and the NJCRA are "interpreted analogously". Cherry v. Borough of Tuckerton, 2016 WL 6080813, at *4 (D.N.J. Oct. 17, 2016) (citing Pettit v. New Jersey, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011)). Thus, the First and Fourth Counts will be analyzed together.

(citing <u>Munroe v. Central Bucks School Dist.</u>, 805 F.3d 454, 466 (3d Cir. 2015)).  Here, the Plaintiff fails to adequately plead factual allegations sufficient to establish a claim of retaliation under 42 U.S.C. § 1983 or the NJCRA against the individual WNY Defendants.

### 1.    Plaintiff Did Not Engage in Constitutionally Protected Conduct

"[E]mployers are allowed to make employment decisions based on political affiliation when 'policymaking' positions are at issue; however, '[n]o clear line can be drawn between policymaking and non-policymaking positions.'" <u>Galli v. New Jersey Meadowlands Comm'n</u>, 490 F.3d 265, 271 (3d Cir. 2007) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347 (1976)). Since no definitive boundary can be drawn between policymaking and non-policymaking positions, the courts have identified several factors to be analyzed:

> Factors suggested by other courts include whether the employee's duties are simply clerical or related to law enforcement, nondiscretionary or technical. Courts have also considered whether the employee participates in Council discussions or other meetings, whether the employee prepares budgets, or has authority to hire or fire employees, the salary of the employee, and the employee's power to control others and to speak in the name of policymakers.

<u>Brown v. Trench</u>, 787 F.2d 167, 169 (3d Cir. 1986) (internal citations omitted); <u>Gallo</u>, 490 F.3d at 271.

However, "[t]he key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility but whether the employee has 'meaningful input into decision making concerning the nature and scope of a major township program." <u>Brown</u>, 787 F.2d at 169-70 (quoting <u>Nekolny v. Painter</u>, 653 F.2d 1164 (7th Cir. 1981)).  Here, Plaintiff alleges he began employment as "Recreation Director" for WNY in 2015.  <u>See</u> ECF No. 1, at ¶ 11. Plaintiff further alleges that "[w]hile his significant accomplishments are too numerous to list", during his employment he "significantly expanded the Summer Food Program, expanded the chess program,

added recreational opportunities…over saw the growth of programs, enhanced summer job opportunities for Town residents, and safely reintegrated recreational programs during the Pandemic." Id. at ¶ 12. Even though Plaintiff concludes that his former job duties "did not entail any policymaking responsibilities", Plaintiff was in a supervisory role as the Director and boasts about his responsibilities in "create[ing]", "expand[ing], and "improv[ing]" the Recreation Department.  Id. at ¶¶ 11-12. Therefore, Plaintiff's termination could not have violated his First Amendment rights.

Additionally, Plaintiff's Complaint fails to allege fact that demonstrate his political affiliation was a substantial factor in his termination. Plaintiff must establish his protected activity was a substantial or motivating factor in the alleged retaliation by plausibly demonstrating a causal link between the adverse employment action and the protected speech.  See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).  Thus, a plaintiff must plausibly allege that (1) defendants were aware of plaintiff's protected speech; (2) the alleged retaliatory action was not de minimis, but sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a sufficient causal link exists between plaintiff's protected speech and the alleged retaliatory action.  McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); Ambrose v. Twp. of Robinson, PA, 303 F.3d 488, 493 (3d Cir. 2002).  The Complaint fails to satisfy any of these factors.

First, Plaintiff fails to allege facts which, if true, would establish that the WNY Defendants were aware of his political activity. Plaintiff alleges that he is the nephew of a former mayor of WNY "with whom Mayor Sires had a falling out over" and worked subordinate to Commissioner Cirillo, who also "had a falling out" with Mayor Sires.  See ECF No. 1, at ¶¶ 14, 16.  Mayor Sires' alleged relationship with other individuals does not equate to knowledge of Plaintiff's familial

relation or support of an opposing candidate. Moreover, Plaintiff blanketly concludes (with no facts, like the rest of his Complaint) that his support of Mr. Cirillo's campaign "was well known by all [D]efendants" providing no facts showing how any of the WNY Defendants actually knew about Plaintiff's political activity. Finally, Plaintiff alleges that all of his "involvement" with Mr. Cirillo's campaign "occurred outside of his working hours and took place outside the Town's facilities" further undercutting that WNY Defendants knew about Plaintiff's conduct. Id. at ¶ 18. Put simply, Plaintiff's allegation that his political activity "was well known by all [D]efendants," is unsupported by any factual detail such as meetings, communications, or remarks evidencing awareness or disapproval. Id. at ¶ 19. This is a far cry from the level of factual detail required under Iqbal, and the First and Fourth Counts of the Complaint must fail.

### 2. Plaintiff Fails To Plausibly Allege Any Facts Regarding A Causal Link Between His Constitutionally Protected Conduct And His Termination

Even if the Court finds that Plaintiff adequately alleged that he was engaged in constitutionally protected conduct, Plaintiff must allege facts establishing a causal link for "if there was not a causal relationship then the [defendants] could not have engaged in its conduct in retaliation for [plaintiff] having engaged in a protected activity". Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Specifically,

> [t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation.

Id. (internal citations omitted).

Courts have held that temporal proximity may be relevant in establishing a causal link between protected conduct and a retaliatory action. Thomas 351 F.3d at 114 (citing to Rauser v.

Horn, 241 F.3d 330, 334 (3d Cir. 2001)).  Here, Plaintiff alleges his political activity occurred in "late 2022", almost a half-year before his termination, on May 16, 2023.  See ECF No. 1, at ¶¶ 16-17, 28. Likewise, the Complaint provides no factual allegations that the WNY Defendants exhibited a pattern of antagonism, or that the WNY Defendants made any statements connecting Plaintiff's campaign involvement with his termination the following year.  See generally ECF No. 1.

Even if the timing of Plaintiff's termination months after his allegedly protected activity were considered, timing alone is ordinarily "insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events". Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997); Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). Here, Plaintiff fails to allege a plausible causal connection between his political activity and his termination.

As to Mayor Sires, the Complaint contains no factual allegation of his involvement or awareness of Plaintiff's employment status. The only allegation to Mayor Sires is that Mayor Sires ran, won his election, and was sworn into office. See generally ECF No. 1. Plaintiff's claims seemingly rest entirely on the timing of his termination occurring hours after the reorganization meeting, without any supporting facts. See ECF No. 1, at ¶¶ 26-29.

Additionally, Mr. Baez's only identified action was signing the termination letter and sharing administrative responsibility for personnel processing. See ECF No. 1, at ¶¶ 24, 28. The Complaint does not any facts Mr. Baez ever knew or reacted to Plaintiff's political affiliation, therefore the element of causation as to Mr. Baez is not met.

Likewise, the allegations pertaining to Ms. Schweitzer identify that her actions were purely administrative, receiving paperwork, handling a title change, and delivering the termination letter

signed by another official. Id., at ¶¶ 20-25, 28. Plaintiff did not allege that Ms. Schweitzer recommended or influenced any decision or that Ms. Schweitzer's failure to process a title change was politically motivated. See generally ECF No. 1.

Finally, the allegations against Commissioner Diaz are the weakest of all. Commissioner Diaz is not factually linked to any employment action, with her name only appearing in the caption and party description, the Complaint fails to allege any conduct, statement, or involvement by her, only the fact that she ran alongside Mayor Sires. See generally ECF No. 1.

Therefore, other than a brief generalized timeline and broad conclusion that WNY Defendants "conspired…to terminate Plaintiff's employment in retaliation for his political activities", Plaintiff does not offer any plausible factual allegations that link his political support for Mr. Cirillo. Id. at ¶ 29. Rather, the Complaint alleges only that Plaintiff's termination occurred after a change in administration, not that it was caused by his campaign activity. The several-month gap between his political participation in late 2022 and his termination in May 2023, without any facts suggesting hostility or retaliatory planning, severs any plausible causal chain. For the foregoing reasons, Plaintiff has failed to plausibly allege a claim of retaliation under 42 U.S.C. § 1983 or the NJCRA, and the First and Fourth Counts of the Complaint against the WNY Defendants should be dismissed.

### B.    The Individual Defendants are Immune from Liability Under The Doctrine of Qualified Immunity

Whether government officials are entitled to protection under the doctrine of qualified immunity is a legal question to be decided by the court. Gormley v. Wood-El, 218 N.J. 72, 113 (2014) ("... [qualified immunity is] a matter of law to be decided by a court, preferably on a properly supported motion for summary judgment or dismissal."). Qualified immunity "protects government officials from personal liability for discretionary actions taken in the course of their

public responsibilities, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown v. State, 230 N.J. 84, 97-98 (2017) (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015)); Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations and citations omitted). Additionally, qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. Therefore, if an official reasonably believes that their conduct complies with the law, qualified immunity will shield that official from liability. Id. at 244. Moreover, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery". Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The Supreme Court has established a two-pronged inquiry for determining whether qualified immunity is applicable: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established". Saucier v. Katz, 533 U.S. 194, 201 (2001). A right is "clearly established" for qualified immunity purposes where its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202.

As applied here, Plaintiff's allegations do not demonstrate either prong of the Saucier analysis, which requires the application of qualified immunity to bar his claims. Plaintiff alleges that he supported Mr. Cirillo during a local election but fails to allege any facts showing that the WNY Defendants' actions violated constitutional or federal rights. At best, the Complaint merely establishes that Plaintiff campaigned for Mr. Cirillo, while the WNY Defendants supported Mayor Sires, an opposing candidate, who ultimately won. See ECF No. 1, at ¶¶ 17-19. There are no well-

pleaded facts linking Plaintiff's political activity or affiliation to his termination, nor any indication that the actions caused Plaintiff's termination, let alone with retaliatory or discriminatory intent and therefore no showing that the WNY Defendants violated a constitutional or federal right.

Furthermore, Plaintiff's allegations do not demonstrate any violation of a clearly established right. When determining if a right is clearly established the "inquiry must be undertaken in light of the case's specific context, not as a broad general proposition." Saucier, 533 U.S. at 195. Again, Plaintiff provides no plausible allegations that indicate his termination occurred for his political support of Mr. Cirillo. Qualified immunity requires that the unlawfulness of the official's conduct be apparent in light of the specific facts known to the official at the time. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Plaintiff's allegations do not support such a conclusion. Accordingly, an analysis of the Saucier factors establishes that the individual WNY Defendants are entitled to qualified immunity from Plaintiff's claims.

To hold otherwise would erode the very purpose of qualified immunity, effectively exposing government officials to liability anytime an employee with opposing political view is subject to discipline or termination. Connick v. Myers, 461 U.S. 138, 143 (1983) ("…government offices could not function if every employment decision became a constitutional matter."). Such an outcome would allow mere disagreement or political association to serve as a basis for litigation, contrary to the doctrine's intent to shield officials who act in an objectively reasonable manner. Plaintiff has failed to satisfy both prongs of the Saucier analysis or provide any factual allegations that may establish causation between the alleged conduct and Plaintiff's termination. Therefore, the individual WNY Defendants' actions were well within their employment responsibilities, there is no violation of Plaintiff's constitutional rights, nor was any such right clearly established at the time it was allegedly violated, and each are entitled to qualified immunity as a matter of law. Thus,

for the foregoing reasons the First and Fourth Counts of the Complaint should be dismissed with prejudice as against the individual WNY Defendants.

**POINT IV**

**THE CONCLUSORY AND BAREBONES ALLEGATIONS IN THE COMPLAINT FAIL TO STATE A <u>MONELL</u> CLAIM AGAINST WNY**

To hold a municipality liable for constitutional violations by its employees, a plaintiff must establish that the action of its employees, which deprived plaintiff of his federal rights, was the result of a policy, statement, ordinance, regulation or decision officially adopted and promulgated by the municipality's officers or pursuant to a governmental custom. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 658 (1978). The allegations must demonstrate a direct causal link between the municipal policy or custom and the alleged constitutional deprivation, in other words, "the municipality itself causes the constitutional violation at issue." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989) (emphasis omitted).

Thus, to sufficiently plead a municipal liability claim under <u>Monell</u>, a plaintiff must allege "(1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy of custom". <u>Wilson v. City of Philadelphia</u>, 177 F. Supp. 3d 885, 908 (3d Cir. 2016) (citing <u>Monell</u>, 436 U.S. at 658). As previously mentioned, the Complaint fails to plausibly allege any constitutional violation on behalf of the individual WNY Defendants. Absent an underlying constitutional violation, there can be no derivative municipal liability under <u>Monell</u>, and the claims against WNY should be dismissed. As the Court has made clear, "[t]here cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact…the officer inflicted no constitutional harm.'" <u>Grazier ex. Rel. White v. City of Philadelphia</u>, 328 F.3d 120, 124 (3d Cir. 2003) (quoting <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)). For the

reasons set forth in Points II and III above, Plaintiff falls far short of adequately alleging the WNY Defendants violated Plaintiff's constitutional rights, therefore, the Second Count of the Complaint should be dismissed..

Even assuming that the Complaint sufficiently alleged a constitutional violation, Plaintiff's Monell claim still fails because the pleadings do not identify any official policy, custom, or decision by a final policymaker that caused such violation to impose liability on the Town of West New York, as required in the second and third element of the Wilson test.

"A municipality may not be held liable under § 1983 for the constitutional torts of employees by virtue of respondeat superior" but instead can only "be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." Hill, 455 F.3d at 245 (citing Monell, 436 U.S. at 690). Under Monell, "policy" is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." Mulholland v. Gov't City of Berks, PA, 706 F.3d 227, 237 (3d Cir. 2013) (internal quotations and citations omitted). Courts have found three circumstances where individual conduct implemented official policy;

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

Hill, 455 F.3d at 245.

The first circumstance is not present since Plaintiff does not allege that the WNY Defendants officially authorized or issued an unconstitutional policy that retaliates against employees who endorse different political candidates but rather argues the actions and decisions

of the WNY Defendants "constitut[ed] official <u>policy</u> of the government itself". <u>See</u> ECF No. 1, at ¶¶ 46 (emphasis added). A single action may constitute municipal policy under <u>Monell</u> when the action is by an official who possesses "final authority to establish municipal policy with respect to the action ordered". <u>Flood v. Sherk</u>, 400 F. Supp. 3d 295, 307 (3d Cir. 2019) (citing <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 480-81 (1986)). In other words, to establish municipal liability, a plaintiff must allege that a decision was made by a high-level policy maker, who possesses final authority to establish municipal policy. <u>Pembaur</u>, 475 U.S. at 481-83 (1986).

Here, Plaintiff fails to plausibly allege that any constitutional violation resulted from an official policy or from a decision made by a final policymaker of WNY. Plaintiff's allegations only provide a weak narrative of personnel actions, a termination letter delivered by Ms. Schweitzer, signed by Mr. Baez. <u>See</u> ECF No. 1, at ¶ 28. Plaintiff does not allege any order, directive, or approval concerning Plaintiff's employment status by a final policy-maker.  As to Mayor Sires, the only action linked is his successful election and assumption of office. <u>Id.</u> at ¶ 15, 26.  As to Commissioner Diaz, she is not even described as taking any action at all, only as being a political supporter of Mayor Sires. <u>See</u> <u>generally</u> ECF No. 1.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort". <u>Monell</u> 436 U.S. at 691. Accordingly, the Complaint's factual allegations fail to demonstrate any "policy" or "custom" on behalf of Mayor Sires or Commissioner Diaz, and only allege administrative functions on behalf of Ms. Schweitzer and Mr. Baez.  Absent such factual allegations, WNY cannot be liable under <u>Monell</u>, and the Second Count of the Complaint against WNY should be dismissed.

## POINT V

## PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY IS MERITLESS

First, Plaintiff's claims under 42 U.S.C. § 1983 and the NJCRA are already asserted against each of the individual defendants, therefore a separate claim for common law civil conspiracy is duplicative and unnecessary.

Furthermore, "[i]n New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" G.D. v. Kenny, 411 N.J. Super. 176, 197 (App. Div. 2009) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005)). Since the "gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong", civil conspiracy is not an independent cause of action, but rather a liability expanding mechanism which only exists if a plaintiff can prove the "presence of an underlying finding of tort liability". Board of Educ., Asbury Park v. Hoek, 38 N.J. 213, 238 (1962); Brown ex rel. Brown v. Philip Morris, Inc., 228 F. Supp. 2d 506 n. 10 (D.N.J. 2002) (citing Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 497 (D.N.J. 1998).

Here, Plaintiff provides only conclusory statements that the WNY Defendants "conspired with one another and acted in concert" to terminate his employment. The Complaint is devoid of any factual allegations even suggesting, let alone establishing, an agreement among the WNY Defendants. See ECF No. 1, at ¶¶ 29, 52-55. Plaintiff merely alleges, "upon information and belief", that the WNY Defendants "discussed at meetings in person and/or through electronic communications including telephone calls, emails, and text messages their plan and agreement to terminate plaintiff" and independently adds that there was a reorganization meeting where Mayor

Sires was officially designated as mayor hours before Plaintiff's termination. Id., at ¶¶ 27-28, 53. The Complaint alleges that Ms. Schweitzer and Mr. Baez acted in their official role and alleges no coordinated plan or collective execution or purpose among the WNY Defendants. Id., at ¶¶ 7, 21-25, 29.

Finally, common law civil conspiracy claims are subject to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq. ("NJTCA"); County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 175 (3d Cir. 2006); Cherry, 2016 WL 6080813, at *6 (collecting cases). Under the NJTCA, a claimant must serve a notice of tort claim against a public entity or public employee within ninety (90) days of accrual of a cause of action. N.J.S.A. 59:8-8; Cherry, 2016 WL 6080813. Plaintiff has not alleged (nor can he allege) that he timely submitted a notice of tort claim as required by the NJTCA. Thus, for all the foregoing reasons, the Third Count of the Complaint should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that Plaintiff Jorge E. Gomez's Complaint (ECF No. 1) against defendants Town of West New York, New Jersey, Albio Sires, Luis Baez, Marielka Diaz and Kelly Schweitzer be dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**TAYLOR LAW GROUP, LLC**
Attorneys for Defendants

Dated: November 12, 2025          By: /s/ Christopher J. Buggy
                                          CHRISTOPHER J. BUGGY