THE LAW OFFICES OF RICHARD MALAGIERE
A Professional Corporation
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
(201) 440-0675
Richard Malagiere
Leonard E. Seaman
Attorneys for Plaintiff, Jorge E. Gomez

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE E. GOMEZ<br><br>          Plaintiff,<br><br>v.<br><br>TOWN OF WEST NEW YORK, NEW JERSEY; ALBIO SIRES (individually and in his official capacity as Mayor of the Town of West New York, New Jersey); LUIS BAEZ (individually and in his official capacity as Municipal Administrator for the Town of West New York, New Jersey); MARIELKA DIAZ (individually and in her official capacities as Commissioner and Director of Public Affairs of the Town of West New York, New Jersey); and, KELLY SCHWEITZER (individually and in her official capacity as Director of Human Resources of the Town of West New York, New Jersey),<br><br>          Defendants. | Civil Action No.:<br>2:25-cv-02242-JXN-CF<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff, Jorge E. Gomez, as and for his first amended complaint against

defendants, the Town of West New York, New Jersey; Albio Sires (individually and

in his official capacity as Mayor of the Town of West New York, New Jersey); Luis Baez (individually and in his official capacity as Municipal Administrator for the Town of West New York, New Jersey); Marielka Diaz (individually and in her official capacities as Commissioner and Director of Public Affairs of the Town of West New York, New Jersey) and, Kelly Schweitzer (individually and in her official capacity as Director of Human Resources of the Town of West New York, New Jersey) alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Jorge E. Gomez, is an individual residing within the State of New Jersey. Mr. Gomez was, at all times relevant hereto, the Recreation Director to the Town of West New York, New Jersey and/or Clerk 1 within the Department of Public Affairs for the Town of West New York, New Jersey. Mr. Gomez resided at 200-59 59th Street, West New York, New Jersey at the times relevant hereto and currently resides at 212-70th Street, Apartment 201, Guttenberg, New Jersey.

2.      Defendant, the Town of West New York, New Jersey ("West New York" or the "Town") a body corporate and politic within the State of New Jersey with its principal place of business at 428 60th St, West New York, NJ 07093. The Town is organized under the State of New Jersey's commission form of municipal government, *N.J.S.A.* 40:70-1 to :76-27 (the "Walsh Act").

2

3.     Defendant, Albio Sires ("Mayor Sires"), currently serves as the Mayor of the Town. Mayor Sires is sued both individually and in his official capacity. Mayor Sires is a resident of the Town and acts or otherwise does business at 428 60th St, West New York, NJ 07093.

4.     Defendant, Luis Baez ("Baez"), currently serves as the Municipal Administrator of the Town. Baez is sued both individually and in his official capacity. Baez acts or otherwise does business at 428 60th St, West New York, NJ 07093.

5.     Defendant, Marielka Diaz ("Diaz") currently serves as a Commissioner and as Director of Public Affairs of the Town of West New York, New Jersey. Diaz is sued both individually and in her official capacities. Diaz acts or otherwise does business at 428 60th St, West New York, NJ 07093.

6.      Defendant, Kelly Schweitzer ("Schweitzer"), currently serves as the Director of Human Resources of the Town. Schweitzer is sued both individually and in her official capacity. Schweitzer acts or otherwise does business at 428 60th St, West New York, NJ 07093.

7.     Baez, Diaz, and Schweitzer were and are political supporters of Mayor Sires. Baez supported the 2023 Sires campaign by, among other things, contributing $500 to that campaign on or about January 20, 2023. Diaz was one of the members

3

of the 2023 Sires ticket and was successfully elected as a Commissioner along with Sires in the 2023 election.

8. This Court has jurisdiction over this matter pursuant to 28 *U.S.C.* § 1331 over all claims alleged in Count One and Count Two as they arise under the Constitution and laws of the United States including 42 *U.S.C.* §§ 1983.

9. This Court has supplemental jurisdiction over this matter pursuant to 28 *U.S.C.* § 1367 over all other claims as they are so related to the claims within original jurisdiction that they form the same case or controversy under Article III of the Constitution.

10. Venue is appropriate pursuant to 28 *U.S.C.* § 1391(b)(1) and (2) as all defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

<b><u>FACTS COMMON TO ALL COUNTS</u></b>

11. As a Walsh Act municipality, the Town is governed by a commission composed of five members who hold all the executive, administrative, judicial and legislative powers and duties in the municipality. Those duties are distributed into and among five departments, the Department of Public Affairs, the Department of Revenue and Finance, the Department of Public Safety, the Department of Parks and Public Property, and the Department of Public Works.

4

12. At the first regular meeting of the Town's Board of Commissioners after the election of its members, the Board designates a commissioner to be the director of each of the five departments. That commissioner serves as the department head and policymaker for the assigned department.

13. During its Reorganization Meeting held on May 21, 2019, the recently elected Board re-created the Department of Public Affairs. The functions and duties within the Department of Public Affairs included, among other things, operations relating to the Health Department, Department of Community Development, Licensing and Code Enforcement, Engineering, Zoning and Planning, maintenance of foreclosed properties, Alcoholic Beverage Control, the Library, Community Relations, Municipal Tenants Advisory Authority, Fire Prevention, Use and Scheduling of Recreational Facilities, Recreation and Buses, including supervised play. Commissioner Cosmo Cirillo was designated as Director of the Department of Public Affairs who was vested with the executive, administrative, judicial and legislative powers and duties pertaining to the officers, boards, bureaus, and other bodies and functional units, or functions of the Department of Public Affairs.

14. Mr. Gomez began his employment as the Recreation Director for the Town on or about June 15, 2015. Mr. Gomez's position was assigned within the Department of Public Affairs. In 2023, Town's salary ordinance (Ordinance #22/21) set the range for salary of the recreation director position from $59,259 - $100,000

per year. That salary range is less than Mr. Gomez's salary at that time was $98,000 per year. At that time, the high end of the salary range for the position of Recreation Director was the 33rd highest of the 139 positions identified on that salary ordinance. It was less than the high end for positions including Clerk Keyboard I, Clerk Typist (DPW), Clerk Keyboard II, Clerk Keyboard Bilingual Spanish/English, and Clerk Bilingual Spanish/English which was $109,000 per year. The high end of the salary range for other positions in the town was much higher. The ten highest positions in the town were Deputy Police Chief ($260,000 per year), Police Captain ($230,000 per year), Municipal Administrator ($220,000 per year), Police Director ($210,000 per year), Police Lieutenant ($210,000 per year), Clerk ($200,000 per year), Deputy Municipal Administrator ($200,000 per year), Town Clerk ($190,000 per year), Construction Official ($187, 500 per year), and Chief Financial Officer ($180,000 per year). Other positions with a salary range higher than Recreation Director included the Assistant Town Attorney ($150,000 per year), Chief of Staff ($150,000 per year), Deputy Tax Collector ($145,000 per year), Assistant Public Health Coordinator ($140,000 per year), and the Deputy Town Clerk ($140,000 per year).

15.    Mr. Gomez's job duties included the day-to-day administration of recreational programs in the Town. He directly reported to Commissioner Cirillo. He had two to four employees who reported directly to him in the positions of Recreational Leader and clerical staff. He was responsible for administrative

6

oversight of seasonal sports leagues operated by the Town such as baseball, soccer, football, cheerleading, and basketball, the Town's summer camp program, and staffing at the Town pool.

16. Mr. Gomez was not required to and did not attend meetings of the Board of Commissioners.

17. Mr. Gomez did not have any responsibility for preparing budgets, was not consulted about, and did not provide any input or information to others for preparation of the Town budget. He did not participate in any important discussions about Town policy. He could not hire or fire Town employees. He could not speak for Commissioner Cirillo or other policy makers. His position did not entail any policymaking responsibilities for the Town and did not require him to be afforded access to any confidential Town information.

18. His position did not provide him with any meaningful input into the decision making concerning the nature and scope of any major program. Those decisions for the Department of Public Affairs were made by Commissioner Cirrilo. Once the nature and scope of any program was determined, Mr. Gomez was involved in administering and overseeing its operation.

19. During his employment by the Town, plaintiff was a hard-working, loyal, and dedicated public servant in West New York. Mr. Gomez devoted himself to the Town and the well-being of all residents. In that regard, he always performed

his job duties well and went to great lengths to create additional recreational opportunities within West New York as well as to expand upon and improve existing programs. While his significant accomplishments are too numerous to list, under Mr. Gomez's direction, the West New York Recreation Department significantly expanded the Summer Food Program, expanded the chess program, added additional recreational opportunities such as a flag football program, yoga, Zumba, summer basketball clinics, and the Babe Ruth Baseball Summer Clinics, oversaw the growth of programs, enhanced summer job opportunities for Town residents, and safely reintegrated recreational programs during the COVID-19 pandemic.

20.     Despite his unequivocal contributions and resulting successes, Mr. Gomez was terminated within days of the May 2023 West New York election and hours of the Town Commission's reorganization meeting. He was replaced by a known supporter of Mayor Sires who not only has no experience running a recreation department but also has less seniority than Mr. Gomez.

21.     Mr. Gomez has known Mayor Sires since he was 10 years old and volunteered for the 2019 municipal election campaign of Gabriel Rodriguez, Cosmo Cirillo and their three running mates who were fully endorsed by then Congressman Sires.

22.     Mr. Gomez is the nephew of former West New York Mayor Silverio A. Vega. Mayor Sires had a falling out with Vega over control of the Town in or around

8

2007. That was after Mayor Sires had been elected to the United States House of Representatives and Vega became the mayor of West New York. According to media reports, the dispute stemmed from either Vega's firing Town employees who had been supporters of Mayor Sires who were replaced by allies of the late mayor, Anthony DeFino, who was reportedly Mayor Sires' bitter pollical enemy and Vega's decision to hang a portrait of DeFino in Town Hall—something Mayor Sires refused to do, or it was the result of Sires' insistence that Vega allow him to influence—or dictate—who would run on the slate in the next election, including Sires wife. (See, https://observer.com/2007/02/in-hudson-county-its-the-sequel-to-menendez-v-garcia)

23.    Before he was hired by the Town, Mr. Gomez, served as a Deputy Coordinator for the Hudson County Office of Emergency Management.

24.    He was hired and served as the Recreation Director during the administration of then-Mayor Felix E. Roque. Throughout his tenue in West New York, Mr. Gomez reported directly to Commissioner Cosmo Cirillo, who served as the Commissioner of Public Affairs.

25.    In late 2021, Mayor Sires made clear that he did not intend to run for re-election for his Congressional seat providing an opening for Rob Menendez, the son of former Democratic political heavyweight and now convicted felon, Robert Menendez, to run for that congressional seat. In 2022, Mr. Sires also made clear his

9

intention to run for a seat on the Board of Commissioners in West New York and become mayor once again.

26. Later that year, Mr. Cirillo and Mayor Sires had a falling out. Because of their falling out, then-incumbent Commissioner Cirillo was pitted in a political battle against Mayor Sires and ran a slate of his own candidates against Mayor Sires and his slate.

27. Given their lengthy and successful working relationship, Mr. Gomez became actively involved in and supported Commissioner Cirillo's campaign in late 2022.

28. Mr. Gomez's involvement with and support of Mr. Cirillo's campaign included, but was not limited to signing petitions, circulation of petitions, door knocking, literature distribution, fundraising, donating to the campaign, display of campaign signs at his home, delivering signs to other homes, accompanying candidates to events, event coordination, field strategy, assistance with campaign messaging, marketing and outreach.

29. He was involved in organizing and implementing Mr. Cirillo's Campaign Kickoff Celebration that was held at Las Palmas restaurant on January 23, 2023 and a Meet & Greet Breakfast at Mi Rinconcito Colombiano restaurant on April 20, 2023.

30. All of Mr. Gomez's involvement with and support of Mr. Cirillo's campaign occurred outside of his working hours and took place outside the Town's facilities.

31. Nevertheless, Mr. Gomez's involvement with and support of Mr. Cirillo's campaign was well known by all defendants. For instance, candidates and members of both campaigns were present at a charitable event held at Social 59 in West New York on or about December 14, 2022. Mr. Gomez was present with Mr. Cirillo throughout the event and was acknowledged by Mayor Sires campaign members, supporters, and political allies, including Sires' confidant and advisor, Weehawken Mayor Richard Turner.

32. Mr. Gomez regularly crossed paths with Sires Campaign workers while they were canvassing the mile-square town to solicit signatures for petitions, interact with voters and circulate campaign literature, and solicit citizens and businessmen to display campaign signs.

33. During one notable occurrence in the campaign, the Cirillo campaign became aware that a Town employee and Sires campaign worker had illegally tampered with and removed a Cirillo campaign sign. Before that illegal activity was made public, members of the Sires campaign made it known that they had obtained surveillance video that they alleged showed Mr. Gomez illegally removing a Sires campaign sign from its location. While the allegations that Mr. Gomez had done

anything illegal or unauthorized was not correct, this interaction demonstrated the Sires campaign's understanding and knowledge of Mr. Gomez' support for Cirillo.

34.    On or about February 14, 2023 Commissioner Cirillo as the Appointing Authority for the Department of Public Affairs, sent an e-mail to Schweitzer ordering that Mr. Gomez's title be changed from Recreation Director to Clerk 1, a classified title under the New Jersey Civil Service Act, N.J.S.A. 11A:1-1 to :12-6, effective immediately.

35.    On or about February 21, 2023 Schweitzer confirmed receipt of that e-mail and asked Mr. Gomez to sign an acknowledgement form recognizing the voluntary change in title. At or about that time, Mr. Gomez met with Schwitzer in person to obtain that form. During that in-person meeting, Mr. Gomez noted his support for Commissioner Cirillo in the upcoming election and his ongoing, active participation in the Cirillo campaign to Schwitzer. He expressed concern to Schwitzer that his political activity could result in retaliatory action against him by Sires and/or his supporters if Sires regained power in the town. He expressed his understanding that the change of title directed by Cirillo was intended to provide him with protection against that happening. Schwitzer acknowledged Mr. Gomez' concerns and his reasoning for the change in title being important for his continued employment. Based on that interaction, Schwitzer had actual knowledge of Mr. Gomez' participation in the Cirillo campaign and his support for Cirillo's candidacy.

12

36.    On or about February 2023 Mr. Gomez emailed his acknowledgment of change of title to Schweitzer.

37.    On or about April 6, 2023 Mr. Gomez emailed Schweitzer to memorialize that he had hand delivered a signed hardcopy of his acknowledgment and that Patty Silva, a clerk in the Recreation Office, had given her the Long Form Title Change document signed by Commissioner Cirillo.

38.    Schweitzer and/or Baez were the only individuals in the Town with authority to perform the administrative processing of the title change in the County and Municipal Personnel System ("CAMPS"), a web-based system operated and maintained by the New Jesey Civil Service Commission that houses the employment information of local government employees.

39.    Schweitzer and/or Baez, in a flagrant and unauthorized disregard for the express directions of Commissioner Cirillo, failed to process the change of Mr. Gomez's title in CAMPS doing so, left Mr. Gomez susceptible to the potential retaliation he sought to avoid.

40.    During the early voting period for the 2023 election, Mr. Gomez was standing on the street with Commissioner Cirillo in front of the Cirillo campaign headquarters to greet voters on their way to a nearby polling place. Mayor Sires passed by on the other side of the street. He crossed the street, looked into the campaign headquarters, and then approached Commissioner Cirillo and Mr. Gomez

13

and shook their hands before continuing on his way. Based on that interaction, Sires had actual knowledge of Mr. Gomez' participation in the Cirillo campaign and his support for Cirillo's candidacy.

41.    Throughout election day in 2023, Mr. Gomez was consistently with Commissioner Cirillo as he campaigned through the Town. He was visible and active to everyone including defendants and other Sires campaign staff.

42.    At the conclusion of the election on May 9, 2023, Mayor Sires and his entire slate of candidates were declared the winners of that election.

43.    The Town commission held its reorganization meeting on May 16, 2023 commencing at or about 12:10 pm. Mayor Sires and his slate of commissioners assumed their offices on the Board of Commissioners at that time, and the Board of Commissioners adopted Resolution R23-123 designating Mayor Sires as the mayor of the Town. The reorganization meeting was concluded and adjourned at or about 12:34 pm on May 9, 2025.

44.    At or about 3:30 pm on May 16, 2023, Schweitzer came to plaintiff's office and handed him a termination letter signed by Baez.

45.    By delivering the termination letter and/or by failing to take action to effectuate the change in Mr. Gomez' job title, Schweitzer was personally involved in, had actual knowledge of and/or acquiesced in the wrongs alleged herein.

14

46. By signing the termination letter, Baez was personally involved in, had actual knowledge of and/or acquiesced in the wrongs alleged herein.

47. At the reorganization meeting that took place on May 16, 2023, Diaz was designated the Director of the Department of Public Affairs. As a result, Diaz replaced Cirillo was the Commissioner who oversaw and supervised Mr. Gomez' position and was the only individual within the government of the Town with the power and authority to discharge Mr. Gomez or to direct someone—like Baez—to do so. By firing Mr. Gomez or directing Baez to fire Mr. Gomez, Diaz was personally involved in, had actual knowledge of and/or acquiesced in the wrongs alleged herein.

48. The retaliation against Mr. Gomez served the political interest of Mayor Sires to solidify his power as he returned to local government by removing a supporter of his political opponent from his job and demonstrating to other employees that their support of an opponent of Sires could result in similar consequences. As such, Mayor Sires was personally involved in, had actual knowledge of and/or acquiesced in the wrongs alleged herein.

49. Mayor Sires, Baez, Schweitzer conspired with one another and acted in concert with each other in the scheme to terminate plaintiff's employment in retaliation for his political activities, speech, expression, and association with and in support of the political campaign of Commissioner Cirillo and to deny him

15

protections available to civil servants under the Civil Service Act by failing to process and/or acknowledge his change of title to a classified position.

## FIRST COUNT
### RETALIATION UNDER COLOR OF STATE LAW ON ACCOUNT OF CONSTITUTIONALLY PROTECTED SPEECH OR EXPRESSION
### (Mayor Sires, Baez, Diaz, and Schweitzer)
### (42 U.S.C. § 1983)

50.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

51.    42 U.S.C. § 1983 provides, among other things, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

52.    Plaintiff's actions in and in support of Mr. Cirillo's campaign, were speech, or expression, and/or association on a matter of public concern.

53.    Plaintiff's actions in and in support of Mr. Cirillo's campaign were not in any way related to his job responsibilities as Recreation Director.

54.    Plaintiff's speech interest on this matter of public concern outweighs the government's interest in effective government operations.

16

55. Plaintiff suffered an adverse employment action through the actions of defendants.

56. Plaintiff's speech, expression, and/or association was a substantial motivating factor in the adverse employment action.

57. Defendants' actions were taken to retaliate against plaintiff for his expression of opinions as a private citizen. The retaliatory acts by defendants were proximately caused by plaintiff's constitutionally protected acts.

58. The retaliatory actions of defendants were sufficient to deter a person of ordinary firmness from exercising their constitutional rights.

59. Defendants' actions caused or subjected plaintiff to a deprivation of his rights, privileges, or immunities secured by the Constitution including, but not limited to, his right to speak or express his political views and opinions, and/or associate with others based on those political views.

60. Defendants' actions were taken under color of a statute, ordinance, regulation, custom, or usage, of the State of New Jersey and/or the Town of West New York.

61. To the extent that they are sued in their official capacities, Mayor Sires, Baez, Diaz, and Schweitzer are not entitled to legislative immunity because those claims are in all respects other than name, to be treated as a suit against the entity. The Town, as a governmental entity is not entitled to any immunity whatsoever.

17

62.    To the extent that they are sued in their individual capacities, legislative immunity does not apply to Mayor Sires, Baez, Diaz, and Schweitzer because their acts were not substantively legislative. An act is substantively legislative where it involves "policy-making of a general purpose" or "line-drawing." Employment actions taken with respect to specific employees do not constitute substantively legislative conduct. Likewise, an official's executive or administrative actions are separable from actions taken in a legislative capacity.

63.    As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

64.    Plaintiff has been damaged thereby.

**WHEREFORE**, plaintiff demands judgment against defendants Albio Sires, Luis Baez, Marielka Diaz, and Kelly Schweitzer, for:

a) Compensatory damages;

b) Nominal damages;

c) Punitive damages;

d) Interest;

e) Costs of suit;

f)  Attorneys' fees; and

g)  Such other relief as the Court deems equitable and just.

**SECOND COUNT**
**GOVERNMENTAL POLICY OR PROCEDURE TO VIOLATE CIVIL**
**RIGHTS - *MONELL v. DEPARTMENT OF SOCIAL SERVICES*,**
**436 U.S. 658 (1978)**
**(Town of West New York)**

65.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

66.    Plaintiff's termination was an act of the municipality constituting official policy of the government itself.

67.    Both Diaz, as Commissioner assigned to the Department of Public Affairs and/or Baez as the Municipal Administrator, were officials of the Town with policymaking authority. Plaintiff was terminated by Diaz and/or Baez individually or at the direction of Diaz.

68.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker regardless of whether or not the action is taken once or repeatedly.

69.    Plaintiff's termination was intended by Mayor Sires, Baez, and Schweitzer to retaliate against plaintiff for his exercise of his rights of speech and association under the First Amendment.

19

70.    As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, loss of retirement, medical and other benefits, medical bills, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

71.    Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Town is liable for the harms and losses sustained by plaintiff.

**WHEREFORE**, plaintiff demands judgment against defendant the Town of West New York, for:

a) Compensatory damages;

b) Nominal damages;

c) Punitive damages;

d) Interest;

e)  Costs of suit;

f)  Attorneys' fees; and

g) Such other relief as the Court deems equitable and just.

## THIRD COUNT
## COMMON LAW CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (Mayor Sires, Baez, Diaz, and Schweitzer)

72.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

73.    Mayor Sires, Baez, and Schweitzer, and others conspired for the purpose of committing acts in violation of 42 U.S.C. § 1983 to damage plaintiff.

74.    Upon information and belief, Mayor Sires, Baez, Diaz, and Schweitzer, and others discussed at meetings in person and/or through electronic communications including telephone calls, emails, and text messages their plan and agreement to terminate plaintiff in retaliation for his exercise of his constitutionally protected rights of speech, expression, and/or association on matters of public concern and agreed to act together and in concert with each other to accomplish their goals.

75.    Mayor Sires, Baez, Diaz, and Schweitzer did or caused to be done acts in furtherance of the object of their conspiracy, including, but not limited to, failing to process his change of title and/or directing the failure to process his change of title, preparing, delivering, and/or directing the preparation and delivery of the May 16, 2023 termination letter to fire plaintiff as Recreation Director for the purpose of violating plaintiff's civil rights.

21

76.    The acts of Mayor Sires, Baez, Diaz and Schweitzer had an unlawful purpose, including, but not limited to damaging plaintiff for his exercise of constitutionally protected rights of speech, expression, and association.

77.    As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, loss of retirement, medical and other benefits, medical bills, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

78.    Plaintiff was damaged thereby.

**WHEREFORE**, plaintiff demands judgment against Albio Sires, Luis Baez, Marielka Diaz, and Kelly Schweitzer, for:

a) Compensatory damages;

b) Punitive damages;

c) Interest;

d) Costs of suit;

e) Attorneys' fees; and

f) Such other relief as the Court deems equitable and just.

**FOURTH COUNT**
**RETALIATION UNDER COLOR OF STATE LAW ON ACCOUNT OF**
**CONSTITUTIONALLY PROTECTED SPEECH OR EXPRESSION**
**(Town of West New York, Mayor Sires, Baez, Diaz, and Schweitzer)**
***N.J.S.A.* 10:6-1 to -2**

79.    Plaintiff repeats and realleges every allegation set forth above as if set forth in this count.

80.    The New Jersey Civil Rights Act, *N.J.S.A.* 10:6-1 to -2 provides that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [*N.J.S.A.* 10:6-2(c)]

81.    Defendants, through their acts and omissions described above, deprived plaintiff of privileges or immunities secured by the Constitution or laws of the United States, and privileges or immunities secured by the Constitution or laws of this State.

82.    Defendants engaged in the acts and omissions aforesaid under color of law.

23

83.    As a direct and proximate result of defendants' unreasonable and unlawful actions, plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

84.    Plaintiff has been damaged thereby.

**WHEREFORE**, plaintiff demands judgment against defendants Town of West New York, Albio Sires, Luis Baez, Marielka Diaz, and Kelly Schweitzer, for:

h)  Compensatory damages;

i)  Nominal damages;

j)  Punitive damages;

k)  Interest;

l)   Costs of suit;

m)  Attorneys' fees; and

n)  Such other relief as the Court deems equitable and just.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Richard Malagiere
RICHARD MALAGIERE
LEONARD E. SEAMAN
THE LAW OFFICES OF RICHARD MALAGIERE
A Professional Corporation
250 Moonachie Road, Suite 300A

24

Moonachie, New Jersey 07074
Tel. (201) 440-0675
rm@malagierelaw.com
les@malagierelaw.com

DATED: July 16, 2025