**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JORGE E. GOMEZ,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF WEST NEW YORK, NEW JERSEY; et al.<br><br>Defendants. | Case No. 2:25-cv-02242 (JXN) (CF)<br><br><br><br><br><br>**Return Date: October 5, 2026** |

---

**DEFENDANTS TOWN OF WEST NEW YORK, ALBIO SIRES, JAVIER BAEZ, MARIELKA DIAZ AND KELLY SCHWEITZER'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

**TAYLOR LAW GROUP, LLC**
Lester E. Taylor, III, Esq., Atty. ID# 000022001
Christopher J. Buggy, Esq., Atty ID# 066242013
Micheaux A.D. Ferdinand, Esq. Atty ID# 481102025
430 Mountain Avenue, Suite 103
New Providence, New Jersey 07974
(908) 219-7771
ltaylor@taylorlawgroupllc.com
cbuggy@taylorlawgroupllc.com
mferdinand@taylorlawgroupllc.com
Attorneys for the WNY Defendants

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ....................iii

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................3

POINT I

LEGAL STANDARD ....................5

POINT II

DESPITE THE OPPORTUNITY TO REPLEAD, THE AMENDED COMPLAINT FAILS TO ALLEGE ANY CONDUCT AT ALL AS TO MAYOR SIRES OR COMMISSIONER DIAZ ....................9

POINT III

JUST AS WITH THE INITIAL COMPLAINT, EACH OF THE COUNTS OF THE AMENDED COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ....................12

A. The Amended Complaint Fails to State A Claim Against the Individual Defendants For Retaliation Under 42 U.S.C. § 1983 ....................12

1. Plaintiff Again Fails To Plausibly Allege His Position As Recreation Director For WNY Did Not Require Political Affiliation ....................13

2. Plaintiff Fails To Plausibly Allege His Constitutionally Protected Conduct Was A Substantial or Motivating Factor In His Termination ....................16

3. The Amended Complaint Fails To Adequately Allege Personal Involvement of the Individual Defendants ....................21

POINT IV

THE CONCLUSORY AND BAREBONES ALLEGATIONS IN THE AMENDED COMPLAINT FAIL TO STATE A MONELL CLAIM AGAINST WNY .....................................................................................................23

POINT V

PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY IS MERITLESS..................29

CONCLUSION .......................................................................................................32

## TABLE OF AUTHORITIES

**Case:** **Page(s):**


Ambrose v. Twp. of Robinson, PA,
303 F.3d 488 (3d Cir. 2006) ........................................ 16

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ........................................ passim

ATR Paper, Inc. v. Bangkit U.S.A., Inc.,
2024 WL 3518119 (D.N.J. July 24, 2024) ........................................ 7, 20

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ........................................ 7

Bergin v. Teamsters Local Union No. 77,
2011 WL 486230 (Feb. 4, 2011) ........................................ 6

Black v. Stephens,
662 F.2d 181 (3d Cir. 1981) ........................................ 25

Board of Educ., Asbury Park v. Hoek,
38 N.J. 213 (1962) ........................................ 29

Brown ex rel. Brown v. Philip Morris, Inc.,
228 F. Supp. 2d 506 (D.N.J. 2002) ........................................ 29

Brown v. Trench,
787 F.2d 167 (3d Cir. 1986) ........................................ 14

Cherry v. Borough of Tuckerton,
2016 WL 6080813 (D.N.J. Oct. 17, 2016) ........................................ 31

Chivarriaga v. New Jersey Dep't of Corr.,
806 F.3d 210 (3d Cir. 2015) ........................................ 22

City of Canton v. Harris,
489 U.S. 378 (1989) ....................................................................................23

City of Oklahoma v. Tuttle,
471 U.S. 808 (1985) ....................................................................................26

County Concrete Corp. v. Town of Roxbury,
442 F.3d 159 (3d Cir. 2006)........................................................................31

Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.,
519 F. Supp. 3d 178 (D.N.J. 2021) ..............................................................5

Eisenbrey v. Wal-Mart East, LP,
2024 WL 4712833 (D.N.J. November 7, 2024)............................................6

Estate of Kamal v. Twp. of Irvington,
790 F. App'x 395 (3d Cir. 2019)..................................................................27

Falat v. Cnty. of Hunterdon,
2013 WL 1163751 (D.N.J. Mar. 19, 2013) ....................................................8

Falco v. Zimmer,
767 F. App'x 288 (3d Cir. 2019)...........................................................12, 13

Flood v. Sherk,
400 F. Supp. 3d 295 (3d Cir. 2019)............................................................26

Fowler v. UPMC Shadyside,
578 F. 3d 203 (3d Cir. 2009)........................................................................6

G.D. v. Kenny,
411 N.J. Super. 176 (App. Div. 2009).........................................................29

Galli v. New Jersey Meadowlands Comm'n,
490 F.3d 265 (3d Cir. 2007)...................................................13, 14, 16

Gawlas v. King,
511 F. App'x 160 (3d Cir. 2013) ...........................................................22, 23

Gormley v. Wood-El,
218 N.J. 72 (2014) ........ 12

Grazier ex. Rel. White v. City of Philadelphia,
328 F.3d 120 (3d Cir. 2003) ........ 24

Hill v. Borough of Kutztown,
455 F.3d 225 (3d Cir. 2006) ........ 13, 25

Ingris v. Borough of Caldwell,
2015 WL 3613499 (D.N.J. June 9, 2015) ........ 7

James v. Evans,
149 F. 139 (3d Cir. 1906) ........ 29

Japhet v. Francis E. Parker Mem. Home, Inc.,
2014 WL 3809173 (D.N.J. July 31, 2014) ........ 7

K.J. v. J.P.D.,
569 F. Supp. 3d 471 (D.N.J. 2023) ........ 8

Krouse v. American Sterilizer Co.,
126 F.3d 494 (3d Cir. 1997) ........ 18

Lauren W. ex rel. Jean W. v. DeFlaminis,
480 F.3d 259 (3d Cir. 2007) ........ 17

Lankford v. City of Clifton Police Dep't,
546 F. Supp. 3d 296 (D.N.J. 2021) ........ 28, 30

McKee v. Hart,
436 F.3d 165 (3d Cir. 2006) ........ 16

Metsopulos v. Runyon,
918 F. Supp. 851 (D.N.J. 1996) ........ 8

Mills v. Ethicon, Inc.,
406 F. Supp. 3d 363 (D.N.J. 2019) ........ 7

Minor v. Del. River & Bay Auth.,
70 F. 4th 168 (3d Cir. 2023) .......... 12

Monell v. Dept. of Soc. Servs. of City of New York,
436 U.S. 658 (1978) .......... 23, 28

Morse v. Lower Merion Sch. Dist.,
132 F.3d 902 (3d Cir. 1997) .......... 6

Mrazek v. Stafford Township,
2017 WL 1788655 (D.N.J. May 5, 2017) .......... 28

Mulholland v. Gov't City of Berks, PA,
706 F.3d 227 (3d Cir. 2013) .......... 25

Natl. Rifle Assn. of Am. v. Vullo,
602 U.S. 175 (2024) .......... 5

Pembaur v. Cincinnati,
475 U.S. 469 (1986) .......... 26

Robinson v. City of Pittsburgh,
120 F.3d 1286 (3d Cir. 1997) .......... 18

Rode v. Dellarciprete,
845 F. 2d 1195 (3d Cir. 1988) .......... 13, 22

Shaw v. Housing Auth. Of Camden,
2012 WL 3283402 (D.N.J. Aug. 10, 2012) .......... 8

Sheeran v. Blythe Shipholding S.A.,
2015 WL 9048979 (D.N.J. Dec. 16, 2015) .......... 7

Sims v. City of Philadelphia,
552 F. App'x 175 (3d Cir. 2014) .......... 27

Thomas v. Town of Hammonton,
351 F.3d 108 (3d Cir. 2003) .......... 16, 17

Wilson v. City of Philadelphia,
177 F. Supp. 3d 885 (3d Cir. 2016) ........................................................ 24

**Statutes, Rules and Other Authorities**

42 U.S.C. § 1983 ........................................................................ passim

N.J.S.A. 10:6-1 ........................................................................ 3

N.J.S.A. 59:1-1 ........................................................................ 31

N.J.S.A. 59:8-8 ........................................................................ 31

Fed. R. Civ. P. 12(b)(6) ........................................................................ passim

**PRELIMINARY STATEMENT**

Much like his initial complaint, Plaintiff Jorge E. Gomez's amended complaint (ECF No. 36) continues his fishing expedition for alleged "wrongs" done to him, amounting to little more than bare conclusions and wholly irrelevant storytelling, all which fail to provide any specific factual underpinning to his allegations. Looking through the smoke and mirrors, the amended complaint, like its equally baseless predecessor, fails to adequately allege any cause of action against Defendants Town of West New York ("WNY"), Albio Sires ("Mayor Sires"), Luis Baez ("Mr. Baez"), Marielka Diaz ("Commissioner Diaz") and Kelly Schweitzer ("Ms. Schweitzer") (collectively, the "WNY Defendants") or any facts showing that any of the WNY Defendants engaged in unconstitutional or otherwise unlawful conduct. As the Court and the parties are well aware, a plaintiff is required to provide more than conclusory statements and broad, generalized allegations – a deficiency which Plaintiff clearly did not cure from his initial complaint.

Additionally, just as in his initial complaint, Plaintiff fails to plausibly allege any facts linking Mayor Sires or Commissioner Diaz to any alleged retaliatory or conspiratorial conduct towards him. Instead, Plaintiff provides general happenstances during a municipal election in an attempt to strike back at the newly elected officials because his supported candidate lost the election. If anything, Plaintiff is retaliating against the WNY Defendants. This is not a valid cause of

action. Moreover, Plaintiff still does not plausibly allege that his position as Recreation Director did not give him meaningful input into the nature and scope of the Recreation Department of WNY, nor does he identify any plausible causal connection between his political activities and any adverse employment action.

Equally deficient are Plaintiff's claim of municipal liability against WNY. The amended complaint, like the initial complaint, identifies no policy, custom, or official act attributable to WNY that could support a claim for liability under Monell v. Dept. of Soc. Servs. Of City of New York. Lastly, not only is Plaintiff's civil conspiracy claim duplicative of his other substantive claims, but it is also legally meritless because a separate cause of action for civil conspiracy does not exist under New Jersey law and even if it did, this claim must be dismissed due to Plaintiff's failure to comply with the New Jersey Tort Claims Act.

Despite being afforded an opportunity to correct the glaring deficiencies identified by the WNY Defendants and the Court in his initial complaint, Plaintiff offers nothing more than conclusory allegations and disconnected occurrences in a futile attempt to recast his perceived grievances as constitutional violations. Due to the blatant and incurable deficiencies in the amended complaint, the WNY Defendants' motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6) should be granted and the amended complaint (ECF No. 36) should be dismissed with prejudice.

## STATEMENT OF FACTS

On or about April 2, 2025, Plaintiff filed a four-count complaint (ECF No. 1) alleging retaliation for constitutionally protected speech or expression under 42 U.S.C. § 1983 against Mayor Sires, Commissioner Diaz, Administrator Baez and Ms. Schweitzer (First Count); a claim for liability against WNY under Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658 (1978) (Second Count); common law civil conspiracy to violate civil rights against Mayor Sires, Commissioner Diaz, Administrator Baez and Ms. Schweitzer (Third Count); and retaliation for constitutionally protected speech or expression under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 ("NJCRA") against Mayor Sires, Commissioner Diaz, Administrator Baez and Ms. Schweitzer (Fourth Count). See generally ECF No. 1. On November 12, 2025, the WNY Defendants filed a motion to dismiss the complaint for failure to state a claim, which the Court granted on June 16, 2026, holding that Plaintiff failed to adequately allege any claims under 42 U.S.C. § 1983, the NJCRA, Monell and dismissed Plaintiff's civil conspiracy claims as time barred. Plaintiff was permitted thirty days to file an amended complaint. See generally ECF Nos. 19, 34.

On or about July 16, 2026, Plaintiff filed an amended complaint. See ECF No. 36. As stated in the initial complaint, the amended complaint alleges Plaintiff was employed as the Recreation Director for WNY, beginning on June 15, 2015. Id.

at ¶ 14. Plaintiff alleges in February 2023, despite being instructed by former Commissioner Cosmo Cirillo ("Mr. Cirillo") to change Plaintiff's title from Recreation Director to Clerk 1, a classified position under New Jersey's Civil Service Act, Mr. Baez and Ms. Schweitzer failed to process the title change. Id. at ¶¶ 34-39. In May 2023, Plaintiff was terminated from his position as Recreation Director shortly after the municipal election won by Mayor Sires and Commissioner Diaz, in which Mr. Cirillo lost. Id. at ¶¶ 42-44, 47-48. Plaintiff alleges this action was directly linked to his constitutionally protected political expression and association with Mr. Cirillo's campaign. Id. at ¶¶ 45-49. As a result, Plaintiff claims to have suffered damages from the alleged deprivation of his First Amendment rights. See generally ECF No. 36.

# LEGAL ARGUMENT

## POINT I

## LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court conducts the following three-part analysis:

> (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are **well-pleaded factual allegations**, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co., 519 F. Supp. 3d 178, 181 (D.N.J. 2021) (emphasis added) (citing Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011)). The second part of the analysis requires the court to accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the non-moving party's favor. Nat'l Rifle Assn. of Am. v. Vullo, 602 U.S. 175, 181 (2024) (citing Iqbal, 556 U.S. at 678-79). However, unsupported conclusions or assertions and mere recitation of the elements of a cause of action are insufficient to survive dismissal. Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Additionally, the court need not accept legal conclusions, bald assertions, or unwarranted factual inferences as true.

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996)). Although compliance with the Fed. R. Civ. P. 8 standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555)). Complaints must be dismissed where they offer "labels or conclusions", "formulaic recitations of the elements of a cause of action", or state naked assertions "devoid of further factual enhancement." Id. Put simply, the "doors of discovery" will not be unlocked for "a plaintiff armed with nothing more than conclusions". Id.; see also Eisenbrey v. Wal-Mart East, LP, 2024 WL 4712833, *7 (D.N.J. Nov. 7, 2024) (noting a plaintiff may not "use discovery 'to conduct a fishing expedition' to search for the facts necessary to establish a legally adequate complaint.") (citing Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 204 (3d Cir. 2006)); Bergin v. Teamsters Local Union No. 77, 2011 WL 486230, at *2 (E.D. Pa. Feb. 4, 2011).

Under the third part of the analysis, the court must determine whether the facts alleged in the complaint are sufficient to demonstrate that the claim for relief is "plausible". Assessing plausibility "will be a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler v. UPMC Shadyside, 578 F. 3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at

679). Dismissal is appropriate if, accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Moreover, conclusory "group pleading" like that employed by Plaintiff in the amended complaint is not permitted by the Federal Rules of Civil Procedure. As was recently reinforced in the District of New Jersey, "[c]ourts routinely dismiss complaints for improper group pleading." ATR Paper, Inc. v. Bangkit U.S.A., Inc., 2024 WL 3518119, at *4 (D.N.J. July 24, 2024) (Martinotti, J.) (citing JD Glob. Sales, Inc. v. Jem Int'l Partners, LP, 2023 WL 4558885, at *7 (D.N.J. July 17, 2023)). This is because group pleading does not provide notice to each defendant of the claims against them. Id. (dismissing counterclaim as vague, improper group pleading); see also Sheeran v. Blythe Shipholding S.A., 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015); Mills v. Ethicon, Inc., 406 F. Supp. 3d 363, 386-87 (D.N.J. 2019) (noting group pleading failed to satisfy Rule 8 and dismissing complaint); Ingris v. Borough of Caldwell, 2015 WL 3613499, at *5-9 (D.N.J. June 9, 2015) (rejecting shotgun-style group pleading and restricting analysis to specific allegations); Japhet v. Francis E. Parker Mem. Home, Inc., 2014 WL 3809173, at *2

(D.N.J. July 31, 2014) (noting that group pleading "injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when."); Falat v. Cnty. of Hunterdon, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (recognizing that "it is not the [c]ourt's job to laboriously search the [c]omplaint for factual assertions that could, in theory, be used to support one legal claim or another."); Shaw v. Housing Auth. of Camden, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (dismissing a complaint for improper group pleading, as "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants."). Plaintiff's amended complaint improperly attempts to group plead and should be dismissed on that basis alone.

Finally, a claim of conspiratorial action requires a plaintiff to provide a discernible factual basis to survive a 12(b)(6) dismissal and vague, conclusory allegations "fall short of the minimum threshold necessary". K.J. v. J.P.D., 569 F. Supp. 3d 471, 482-83 (D.N.J. 2023). As recognized by the court almost thirty years ago, "a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." Metsopulos v. Runyon, 918 F. Supp. 851, 857 (D.N.J. 1996).

When analyzed under the foregoing standard, the amended complaint fails to plausibly allege actionable conduct by any of the WNY Defendants. Consequently,

the amended complaint against the WNY Defendants must be dismissed with prejudice.

## POINT II

## DESPITE THE OPPORTUNITY TO REPLEAD, THE AMENDED COMPLAINT AGAIN FAILS TO ALLEGE ANY CONDUCT AT ALL AS TO MAYOR SIRES OR COMMISSIONER DIAZ

While the amended complaint, like its predecessor, consists entirely of barebone conclusions without any specific factual allegations that plausibly assert claims involving any of the WNY Defendants, the "allegations" directed at Mayor Sires and Commissioner Diaz are especially deficient. As to Mayor Sires, the amended complaint merely realleges a majority of the same allegations in the initial complaint; that Mayor Sires declared candidacy for Mayor of West New York, prevailed in the election held on May 9, 2023, and was sworn into office approximately seven days thereafter. See ECF No. 36, at ¶¶ 25, 42-43. Additionally, the amended complaint realleges with zero factual underpinning, that Mayor Sires "conspired" with Mr. Baez and Ms. Schweitzer. Id. at ¶ 29. The amended complaint includes layer upon layer of "background" not germane to the case such as, Mayor Sires and Plaintiff attending the same social event, Plaintiff allegedly knowing Mayor Sires since he was a minor, and Mayor Sires shaking Plaintiff's hand at a political event. Id., at ¶¶ 21, 31, 40. Plaintiff also alleges that Mayor Sires's supporters, not Mayor Sires himself, witnessed Plaintiff during political events,

including a "notable occurrence" of campaign workers, none of which being any of the WNY Defendants, from both Mr. Cirillo's and Mayor Sires's campaigns allegedly tampering with campaign signs. Id., at ¶¶ 32-33. The amended complaint is silent as to Mayor Sires himself. Plaintiff's amended complaint is replete with things he allegedly knows and did yet is conspicuously devoid of any allegations regarding the WNY Defendants' knowledge or conduct.

The amended complaint's feeble factual allegations are insufficient to plausibly allege Mayor Sires's personal knowledge regarding Plaintiff's former position as Recreation Director and his alleged termination from that position. The only "act" attributed to Mayor Sires is the generalized conclusion that he participated in a conspiracy, unsupported by any description of a meeting, conversation, directive, or other communication. Id., at ¶ 49. These allegations are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that Iqbal instructs courts to disregard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

As with the initial complaint, the allegations against Commissioner Diaz provide even less factual underpinning for a cause of action. Commissioner Diaz is only identified by title and described as a political supporter of Mayor Sires. See ECF No. 36, at ¶¶ 5, 7. No factual allegations in the amended complaint tie any act, statement, or omission by Commissioner Diaz to Plaintiff. The amended complaint

once again lacks even minimal allegations of Commissioner Diaz's knowledge of Plaintiff's political activities or her participation in employment decisions, only allegations that after a successful campaign run, Commissioner Diaz "oversaw and supervised" Plaintiff's position as Recreation Director and "was the only individual within the government of [WNY] with the power and authority to discharge" or direct someone to discharge Plaintiff. Id., at ¶ 47. Plaintiff only provides generic conclusory allegations that due to Commissioner Diaz's newly elected position, she "was personally involved in, had actual knowledge of and/or acquiesced in the wrongs alleged herein". Id.[1]

As stated above in Point I, the plausibility standard on a Rule 12(b)(6) motion to dismiss requires more than a mere possibility of wrongdoing. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When a complaint alleges facts that are merely consistent with a defendant's potential liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. Here, the amended complaint's allegations are insufficient to plausibly allege that Mayor Sires

[1] Plaintiff claims that Commissioner Diaz failed to process his change in title (or caused it to not be processed) in retaliation for his support of Mr. Cirillo's campaign. This is nonsensical. Plaintiff alleges the change in title was "order[ed]" in February 2023, months before Commissioner Diaz was sworn in. See ECF No. 36, at ¶ 34. Thus, it is impossible for Commissioner Diaz to have caused, in any way, the change in title to have not been processed. Critically, the amended complaint provides no explanation or plausible allegations as to how this could be possible, which it plainly cannot.

or Commissioner Diaz engaged in any conduct that violated Plaintiff's constitutional rights. Due to the wholesale failure to allege any actionable conduct, the amended complaint should be dismissed with prejudice as to Mayor Sires and Commissioner Diaz.

## POINT III

## JUST AS WITH THE INTIAL COMPLAINT, EACH OF THE COUNTS OF THE AMENDED COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

### A. The Amended Complaint Fails To State A Claim Against The Individual Defendants For Retaliation Under 42 U.S.C. § 1983

To state a First Amendment retaliation claim under 42 U.S.C. § 1983 or the NJCRA,[2] a plaintiff must allege that: (1) they were employed by a public agency in a position for which political affiliation was not required, (2) they engaged in constitutionally protected conduct and (3) the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory actions. Minor v. Del. River & Bay Auth., 70 F. 4th 168, 175 (3d Cir. 2023) (citing Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007)); Falco v. Zimmer, 767 F. App'x 288, 299 (3d Cir. 2019) (holding the elements of a First Amendment

[2] Claims under 42 U.S.C. § 1983 and the NJCRA operate alongside each other. Gormley v. Wood-El, 218 N.J. 72, 112-13 (2014). Therefore, the First and Fourth Counts will be analyzed together.

retaliation claim differ for public employees and private citizens). See also Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). If a plaintiff satisfies the first three elements, the burden then shifts to the employer to prove that the same action would have been taken even if the conduct did not occur. Falco, 767 F. App'x at 299 (citing Munroe v. Central Bucks School Dist., 805 F.3d 454, 466 (3d Cir. 2015)).

Additionally, defendants in "civil rights action[s] must have **personal involvement** in the alleged wrongs" which can be shown "through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988) (citation omitted) (emphasis added). Allegations of a defendant's participation, actual knowledge or acquiescence must be supported by sufficiently particularized facts. Id. Here, Plaintiff again fails to adequately plead factual allegations sufficient to establish a claim of retaliation under 42 U.S.C. § 1983 or the NJCRA against the individual WNY Defendants.

### 1. Plaintiff Again Fails to Plausibly Allege His Position as Recreation Director for WNY Did Not Require Political Affiliation

"[E]mployers are allowed to make employment decisions based on political affiliation when 'policymaking' positions are at issue; however, '[n]o clear line can be drawn between policymaking and non-policymaking positions.'" Galli, 490 F.3d at 271 (quoting Elrod v. Burns, 427 U.S. 347 (1976)). Since no definitive boundary

can be drawn between policymaking and non-policymaking positions, the courts have identified several factors to be analyzed:

> Factors suggested by other courts include whether the employee's duties are simply clerical or related to law enforcement, nondiscretionary or technical. Courts have also considered whether the employee participates in Council discussions or other meetings, whether the employee prepares budgets, or has authority to hire or fire employees, the salary of the employee, and the employee's power to control others and to speak in the name of policymakers.

Brown v. Trench, 787 F.2d 167, 169 (3d Cir. 1986) (internal citations omitted); Galli, 490 F.3d at 271.

However, "[t]he key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility but whether the employee has 'meaningful input into decision making concerning the nature and scope of a major township program." Brown, 787 F.2d at 169-70 (quoting Nekolny v. Painter, 653 F.2d 1164 (7th Cir. 1981)). Here, the salary range for Plaintiff's former position as Recreation Director was $59,259-$100,000. See ECF No. 36, ¶ 14. Plaintiff earned $98,000, just $2,000 short of the maximum salary for that position. Id. Additionally, Plaintiff admits that he had "two to four employees who reported directly to him" and was responsible for "staffing" the WNY pool, indicating his authority to hire and fire employees (or at least meaningful participation in the hiring and firing process). Id., at ¶ 15. While the amended complaint alleges in conclusory fashion

that Plaintiff's role as Recreation Director did not "provide him with any meaningful input into the decision making concerning the nature and scope of any major program", Plaintiff's mere formulaic recitation of case law is directly contradicted by his allegations, severely undermining his conclusory claim that his former position was non-policymaking. Id., ¶ 18. For example, Plaintiff alleges his "significant accomplishments", included but were not limited to, "significantly expanded the Summer Food Program, expanded the chess program, added recreational opportunities…over saw the growth of programs, enhanced summer job opportunities for Town residents, and safely reintegrated recreational programs during the Pandemic." Id., at ¶ 19. Plaintiff further alleges his responsibilities included "oversight of seasonal sports leagues operated by [WNY] such as baseball, soccer, football, cheerleading, and basketball, [WNY's] summer camp program, and staffing at [WNY's] pool." Id., at ¶ 15. Thus, Plaintiff's blanket conclusory statement that his former job duties "did not entail any policymaking responsibilities" are flatly contradicted by his own description of his role as Recreation Director. Id., at ¶ 18.

Therefore, Plaintiff again fails to plausibly allege his former role as Recreation Director was a position for which political affiliation was not required which is necessary to assert a § 1983 claim. Consequently, the amended complaint should be dismissed with prejudice.

### 2. Plaintiff Fails to Plausibly Allege His Constitutionally Protected Conduct Was A Substantial or Motiviating Factor in His Termination

Plaintiff's amended complaint fails to allege any facts that demonstrate his political affiliation was a substantial factor in his termination. Plaintiff must establish his protected activity was a substantial or motivating factor in the alleged retaliation by plausibly demonstrating a causal link between the adverse employment action and the protected speech. See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003). Thus, a plaintiff must plausibly allege that (1) defendants were aware of plaintiff's protected speech; (2) the alleged retaliatory action was not de minimis, but sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a sufficient causal link exists between plaintiff's protected speech and the alleged retaliatory action. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); Ambrose v. Twp. of Robinson, PA, 303 F.3d 488, 493 (3d Cir. 2002). The amended complaint fails to satisfy any of these factors.

Moreover, to successfully allege that his constitutionally protected conduct was a "substantial or motivating factor", Plaintiff must allege "'defendant[s] knew of [the] plaintiff's political persuasion,' which requires proof of both knowledge and causation." Galli, 490 F.3d at 275 (citations omitted). Plaintiff must allege facts establishing a causal link for "if there was not a causal relationship then the [defendants] could not have engaged in its conduct in retaliation for [plaintiff]

having engaged in a protected activity". Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Specifically,

> [t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation.

Id. (internal citations omitted).

Courts have held that temporal proximity may be relevant in establishing a causal link between protected conduct and a retaliatory action. Thomas 351 F.3d at 114 (citing to Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)). Here, Plaintiff alleges his political activity occurred in "late 2022", almost a half-year before his termination, on May 16, 2023. See ECF No. 36, at ¶¶ 22, 44. Likewise, the amended complaint provides no factual allegations that the WNY Defendants exhibited a pattern of antagonism, or that the WNY Defendants made any statements connecting Plaintiff's campaign involvement with his termination the following year. See generally ECF No. 36. Rather, the amended complaint alleges only that Plaintiff's termination occurred after a change in administration, not that it was caused by his campaign activity. The several-month gap between his political participation in late 2022 and his termination in May 2023 remain unrelated to any individual Defendant and absent of any allegations of hostility or retaliatory planning, severing any

inference of knowledge, personal involvement, or causation.

Even if the timing of Plaintiff's termination months after his allegedly protected activity were considered, timing alone is ordinarily "insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events". Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997); Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). Here, Plaintiff fails to allege a plausible causal connection between his political activity and his termination.

The amended complaint contains no plausible factual allegations, only conclusory and convoluted allegations, insufficient to allow the Court with to reasonably infer that the individual Defendants knew of Plaintiff's political involvement with Mr. Cirillo's campaign.

First, as to Mayor Sires, Plaintiff alleges that he is the nephew of a former mayor of WNY "with whom Mayor Sires had a falling out", worked subordinate to a former commissioner, Mr. Cirillo, who allegedly also "had a falling out" with Mayor Sires and that Plaintiff has known Mayor Sires since he was a minor. See ECF No. 36, at ¶¶ 21-22, 26. In fact, Plaintiff alleges that in 2019 he volunteered in a municipal campaign for "running mates who were fully endorsed by then Congressman Sires." Id., at ¶ 21. Even accepting these allegations as true, Plaintiff does not allege any facts establishing that Mayor Sires knew of Plaintiff's

involvement in a campaign against Mayor Sires' political interests. At most, the allegation could support an inference that Mayor Sires was aware that Plaintiff had engaged in some form of political activity in the past but fails to reasonably establish that Mayor Sires knew Plaintiff was supporting an opposing candidate and caused his termination on that basis.

Once again, Plaintiff relies largely on the allegation that his support for Mr. Cirillo's campaign "was well known by all [D]efendants," without establishing that each of the individual Defendants specifically had such knowledge. Id., at ¶ 31. Plaintiff alleges that "candidates and members of both campaigns" attended a charity event where Plaintiff was present with Mr. Cirillo and "acknowledged by Mayor Sires campaign members, supporters, and political allies, including [Mayor] Sires' confidant and advisor". Id. Plaintiff also includes that he "regularly crossed paths with [Mayor] Sires Campaign workers while…canvassing" and a "notable occurrence" involving an unidentified WNY employee, an unidentified "[Mayor] Sires campaign worker", and Plaintiff allegedly tampering with campaigns signs from opposing sides. Id., at ¶¶ 32-33. Plaintiff also alleges that Mayor Sires shook his hand at a "nearby polling place" and that Plaintiff "was visible and active to everyone" on election day with Mayor Sires's opponent. Id., at ¶¶ 40-41. These allegations fail to identify whether any of the WNY Defendants individually had knowledge, witnessed, participated in, or were informed of any of these events.

Knowledge held by unnamed or unidentified third parties cannot be imputed on the individual Defendants absent any facts showing that the information was relayed to them. This is specifically the type of generalized group pleading that "'lump[] [d]efendants together as a group and asserts general common factual allegations against all" disallowing "the court to ascertain the role of each defendant in the claim". ATR Paper Inc., 2024 WL 3518119, at *4 (citations omitted).

Secondly, with respect to Commissioner Diaz, the amended complaint's allegations against her are the weakest of all. Plaintiff provides zero facts from which even an inference could be drawn that Commissioner Diaz had knowledge of Plaintiff's existence, let alone his political involvement. See generally ECF No. 36. Plaintiff simply alleges that after a successful election, Commissioner Diaz was appointed the Director of Public Affairs, which "oversaw and supervised" Plaintiff's position, and "[b]y firing [Plaintiff] or directing Baez to fire [Plaintiff], [Commissioner] Diaz…had actual knowledge of and/or acquiesced in the wrongs alleged herein." Id., at ¶¶ 7, 47. This is precisely the kind of conclusory allegations that courts deem insufficient on a motion to dismiss. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Additionally, the only action attributed to Mr. Baez is his signature on the termination letter and his sharing administrative responsibility for personnel processing. See ECF No. 36, at ¶¶ 38, 44. The amended complaint does not allege

any facts that Mr. Baez ever knew or reacted to Plaintiff's political affiliation.

Lastly and similarly to Mr. Baez, the allegations relating to Ms. Schweitzer only allege that she performed the administrative duties of her position as Director of Human Resources for WNY. Id., at ¶¶ 34-38. Specifically, Plaintiff references an "in-person meeting" where he noted to Ms. Schweitzer his "support" and active participation" in Mr. Cirillo's campaign and his "expressed concern to [Ms.] Schweitzer that his political activity could result in retaliatory action", to which Ms. Schweitzer "acknowledged" Plaintiff's concerns. Id., at ¶ 35. The amended complaint fails to plausibly allege Ms. Schweitzer considered Plaintiff's political affiliation into account for any retaliatory action (of whom it is unclear) providing only highly speculative allegations which fail to satisfy the requirement that Plaintiff's political affiliation was a substantial or motivating factor in his termination.

The amended complaint's allegations fall woefully short of the level of factual detail required under Iqbal, and the First and Fourth Counts of the Complaint must be dismissed with prejudice.

**3. The Amended Complaint Fails to Adequately Allege Personal Involvement of the Individual Defendants**

"Because vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, **through the official's own individual actions**, has violated the Constitution." Iqbal, 556 U.S. at 663 (emphasis

added) (citations omitted). Specifically, "[a]llegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode, 845 F. 2d at 1207 (holding that plaintiff's argument that the defendant governor had personal knowledge or involvement due to newspaper articles, investigation, and filed grievances was insufficient and based on "hypothesis" not actual knowledge); see also Chivarriaga v. New Jersey Dep't of Corr., 806 F. 3d 210 (3d Cir. 2015) (stating that knowledge "must be actual, not constructive" requiring a plaintiff to "portray specific conduct by state officials which violates some constitutional right.") (citations omitted).

Here, other than a brief generalized timeline and broad conclusions that the alleged retaliation against Plaintiff "served the political interest of Mayor Sires" and that Mayor Sires, Mr. Baez and Ms. Schweitzer "conspired…to terminate [P]laintiff's employment in retaliation for his political activities", Plaintiff does not offer any plausible factual allegations that each individual Defendant took action in retaliation against Plaintiff. See ECF No. 36, at ¶¶ 48-49. The amended complaint fails to allege any of the individual Defendants "engaged in a pattern of antagonistic acts to retaliate against [Plaintiff] for his…political affiliation." Gawlas v. King, 511 F. App'x 160, 163 (3d Cir. 2013). Therefore, "[t]he mere fact that [Plaintiff] engaged in conduct he claims to be protected by the First Amendment and the [d]efendants took actions with which [Plaintiff] disagreed does not suffice to present

a plausible retaliation claim." Id.

For the foregoing reasons, Plaintiff has failed to plausibly allege a claim of retaliation under 42 U.S.C. § 1983 or the NJCRA, and the First and Fourth Counts of the amended complaint against the WNY Defendants should be dismissed with prejudice.

## POINT IV

## THE CONCLUSORY AND BAREBONES ALLEGATIONS IN THE AMENDED COMPLAINT FAIL TO STATE A MONELL CLAIM AGAINST WNY

To hold a municipality liable for constitutional violations by its employees, a plaintiff must establish that the action of its employees, which deprived plaintiff of his federal rights, was the result of a policy, statement, ordinance, regulation or decision officially adopted and promulgated by the municipality's officers or pursuant to a governmental custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 658 (1978). The allegations must demonstrate a direct causal link between the municipal policy or custom and the alleged constitutional deprivation, in other words, "the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis omitted).

Thus, to sufficiently plead a municipal liability claim under Monell, a plaintiff must allege "(1) an underlying constitutional violation; (2) a policy or custom

attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy of custom". Wilson v. City of Philadelphia, 177 F. Supp. 3d 885, 908 (3d Cir. 2016) (citing Monell, 436 U.S. at 658). As previously mentioned, the amended complaint fails to plausibly allege any constitutional violation on behalf of any individual WNY Defendant. Absent an underlying constitutional violation, there can be no derivative municipal liability under Monell, and the claims against WNY should be dismissed. As the Court has made clear, "[t]here cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact…the officer inflicted no constitutional harm.''' Grazier ex. Rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). For the reasons set forth in Points II and III above, Plaintiff falls far short of adequately alleging the WNY Defendants violated Plaintiff's constitutional rights, therefore, the Second Count of the amended complaint should be dismissed.

Even assuming that the amended complaint sufficiently alleged a constitutional violation, Plaintiff's Monell claim still fails because the pleadings do not identify any official policy, custom, or decision by a final policymaker that caused such violation to impose liability on the Town of West New York, as required in the second and third element of the test provided in Wilson.

"A municipality may not be held liable under § 1983 for the constitutional

torts of employees by virtue of respondeat superior" but instead can only "be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." Hill, 455 F.3d at 245 (citing Monell, 436 U.S. at 690); see also Black v. Stephens, 662 F.2d 181, 191 (3d Cir. 1981). Under Monell, "policy" is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." Mulholland v. Gov't City of Berks, PA, 706 F.3d 227, 237 (3d Cir. 2013) (internal quotations and citations omitted). Courts have found three circumstances where individual conduct implemented official policy;

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

Hill, 455 F.3d at 245.

The first circumstance is not present since Plaintiff does not allege that the WNY Defendants officially authorized or issued an unconstitutional policy that retaliates against employees who endorse different political candidates but rather argues the actions and decisions of the WNY Defendants "constitut[ed] official policy of the government itself". See ECF No. 36, at ¶ 66 (emphasis added). In rare

occasions not applicable here, a single action may constitute municipal policy under Monell when the action is by an official who possesses "final authority to establish municipal policy with respect to the action ordered". Flood v. Sherk, 400 F. Supp. 3d 295, 307 (3d Cir. 2019) (citing Pembaur v. Cincinnati, 475 U.S. 469, 480-81 (1986)). Contrary to Plaintiff's allegations, a single unlawful act of an employee does not imply a policy, practice or custom sufficient to impose liability under the Monell framework. City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985). In other words, to establish municipal liability, a plaintiff must allege that a decision was made by a high-level policy maker, who possesses final authority to establish municipal policy and "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur, 475 U.S. at 481-83 (1986).

Here, Plaintiff fails to plausibly allege that any constitutional violation resulted from an official policy or from a decision made by a final policymaker of WNY. Plaintiff's allegations only provide a weak narrative of personnel actions, a termination letter delivered by Ms. Schweitzer, signed by Mr. Baez. See ECF No. 36, at ¶ 44. Plaintiff does not allege any order, directive, or approval concerning Plaintiff's employment status by a final policy-maker. As to Mayor Sires, the only actions he is alleged to have taken is shaking Plaintiff's hand during early voting,

Mayor Sires' successful election and assumption of office. Id., at ¶¶ 30, 42-43. As to Commissioner Diaz, Plaintiff mentions only her position as Director of the Department of Public Affairs and authority to "direct someone" to establish any link. Id., at ¶ 47.

Plaintiff's allegations that Mr. Baez and Ms. Schweitzer "ignored the lawful direction of Commissioner Cirillo to transfer" his job title is not sufficient to allege an action against WNY according to Monell. "Under Monell, the failure of Individual City employees to follow an otherwise-constitutional municipal policy does not subject the municipality to liability under § 1983." Sims v. City of Philadelphia, 552 F. App'x 175, 177 (3d Cir. 2014). Additionally, Plaintiff blanketly asserts "[t]he retaliation against [him] served the political interest of Mayor Sires to solidify his power as he returned to local government by removing a supporter of his political opponent from his job and demonstrating to other employees that their support of an opponent of [Mayor] Sires could result in similar consequences." See ECF No. 36, at ¶ 48. However, this blanket assertion fails to allege (let alone plausibly allege) a causal link between the execution of a policy and Plaintiff's termination. Estate of Kamal v. Twp. Of Irvington, 790 F. App'x 395, 398 (3d Cir. 2019) (holding that the plaintiff's allegations merely restated the legal elements of a Monell claim, were "not 'entitled to the assumption of truth'" and were insufficient to state a plausible claim for relief) (citing Iqbal, 556 U.S. at 680). Instead, liability

may only be imposed when a municipality's "policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself is the 'moving force' behind the constitutional tort of one of its employees." Lankford v. City of Clifton Police Dep't, 546 F. Supp. 3d 296, 328 (D.N.J. 2021).

In Mrazek v. Stafford Twp., No. CV 13-1091(FLW), 2017 WL 1788655 at *9 (D.N.J. May 5, 2017), aff'd, 744 F. App'x 69 (3d Cir. 2018), the plaintiff argued that the chief of police had final authority in setting policy and that he unlawfully terminated plaintiff's employment, thus the township was liable for plaintiff's termination under Monell. The Third Circuit rejected this argument, noting that the chief of police was not a final policymaker and there were no specific allegations or evidence that the mayor or township participated in plaintiff's termination. Id. at *11. Here, the amended complaint failed to allege a policy, practice, or custom of WNY that caused Plaintiff's alleged deprivation of his First Amendment rights.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort". Monell 436 U.S. at 691. Here, Plaintiff fails to demonstrate any "policy" or "custom" on behalf of Mayor Sires or Commissioner Diaz, and only alleges administrative functions on behalf of Ms. Schweitzer and Mr. Baez. Absent such factual allegations, WNY cannot be liable under Monell, and the Second Count of the Complaint against WNY should be dismissed with prejudice.

## POINT V

## PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY IS MERITLESS

Plaintiff's claims under 42 U.S.C. § 1983 and the NJCRA are already asserted against each of the individual defendants, therefore a separate claim for common law civil conspiracy is duplicative and unnecessary.

Furthermore, "[i]n New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" G.D. v. Kenny, 411 N.J. Super. 176, 197 (App. Div. 2009) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005)). Since the "gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong", civil conspiracy is not an independent cause of action, but rather a liability expanding mechanism which only exists if a plaintiff can prove the "presence of an underlying finding of tort liability". Board of Educ., Asbury Park v. Hoek, 38 N.J. 213, 238 (1962); Brown ex rel. Brown v. Philip Morris, Inc., 228 F. Supp. 2d 506 n. 10 (D.N.J. 2002) (citing Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 497 (D.N.J. 1998); James v. Evans, 149 F. 136, 140 (3d Cir. 1906) (holding that "the gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff").

For the reasons stated above, Plaintiff's § 1983 and NJCRA claims fail, therefore, the a derivative conspiracy claim cannot survive without an underlying wrong.

Even if the Court determines that Plaintiff's claims are sufficiently and properly plead (which it should not), Plaintiff provides only conclusory statements that Mayor Sires, Mr. Baez, and Ms. Schweitzer "conspired with one another and acted in concert" to terminate his employment. See ECF No. 36, at ¶ 49.[3] "'The mere occurrence of several meetings between [defendants does] not establish a meeting of the minds' for the purposed of conspiracy." (brackets in original) Lankford, 546 F. Supp. 3d at 318 (quoting James v. Dalton, 867 F. Supp. 2d 572, 585 (D.N.J. 2012)). The amended complaint is devoid of any factual allegations even suggesting, let alone establishing, an agreement among the WNY Defendants. See generally ECF No. 36. Plaintiff merely alleges, "upon information and belief", that the WNY Defendants "discussed at meetings in person and/or through electronic communications including telephone calls, emails, and text messages their plan and agreement to terminate plaintiff" and independently adds that there was a reorganization meeting where Mayor Sires was officially designated as mayor hours before Plaintiff's termination. Id., at ¶ 74. The amended complaint alleges that Ms. Schweitzer and Mr. Baez acted in their official role and alleges no coordinated plan

[3] While Plaintiff includes Commissioner Diaz in his common law conspiracy count, he omits Commissioner Diaz from his lone conclusory allegation, naming only Mayor Sires, Mr. Baez, and Ms. Schweitzer. See ECF No. 36 at ¶ 49.

or collective execution or purpose among the WNY Defendants. Id., at ¶¶ 7, 21-25, 29.

Finally, common law civil conspiracy claims are subject to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq. ("NJTCA"); County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 175 (3d Cir. 2006); Cherry v. Borough of Tuckerton, 2016 WL 6080813, at *6 (D.N.J. Oct. 17, 2016) (collecting cases). Under the NJTCA, a claimant must serve a notice of tort claim against a public entity or public employee within ninety (90) days of accrual of a cause of action. N.J.S.A. 59:8-8. If not, the claimant is "'forever barred' from asserting that cause of action." County Concrete Corp., 442 F.3d at 174-75 (citing Moon v. Warren Haven Nursing Home, 182 N.J. 507 (2005)). Plaintiff has not alleged (nor can he allege) that he timely submitted a notice of tort claim as required by the NJTCA. Thus, for all the foregoing reasons, the Third Count of the Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff Jorge E. Gomez's amended complaint (ECF No. 36) against defendants Town of West New York, New Jersey, Albio Sires, Luis Baez, Marielka Diaz and Kelly Schweitzer should be dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**TAYLOR LAW GROUP, LLC**
Attorneys for the WNY Defendants

Dated: September 10, 2026

By: /s/ Micheaux A.D. Ferdinand
MICHEAUX A.D. FERDINAND