UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE E. GOMEZ<br><br>Plaintiff,<br>v.<br><br>TOWN OF WEST NEW YORK, NEW JERSEY; ALBIO SIRES (individually and in his official capacity as Mayor of the Town of West New York, New Jersey); LUIS BAEZ (individually and in his official capacity as Municipal Administrator for the Town of West New York, New Jersey); MARIELKA DIAZ (individually and in her official capacities as Commissioner and Director of Public Affairs of the Town of West New York, New Jersey); and, KELLY SCHWEITZER (individually and in her official capacity as Director of Human Resources of the Town of West New York, New Jersey),<br><br>Defendants. | Civil Action No. :25-cv-02242 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

THE LAW OFFICES OF RICHARD MALAGIERE
A Professional Corporation
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
(201) 440-0675
Richard Malagiere
Leonard E. Seaman
Attorneys for Plaintiff, Jorge E. Gomez

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............ ii

STATEMENT OF FACTS ............ 1

LEGAL ARGUMENT ............ 6

I. STANDARDS FOR A MOTION TO DISMISS UNDER *Fed. R. Civ. P*. 12(b)(6) ............ 6

II. THE COMPLAINT PROPERLY PLEADS A CLAIM FOR FIRST AMENDMENT RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 (FIRST COUNT) ............ 9

III. THE COMPLAINT PROPERLY ASSERTS A CLAIM AGAINST THE TOWN OF WEST NEW YORK ............ 12

IV. PLAINTIFF HAS PROPERLY ALLEGED A CIVIL CONSPIRACY ............ 13

V. EVEN IF THE COURT DISMISSES PLAINTIFF'S FEDERAL CLAIMS, IT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER HIS COMMON LAW AND STATE LAW CLAIMS ............ 115

CONCLUSION ............ 17

# TABLE OF AUTHORITIES

## Cases

*Allah v. Seiverling*,
229 F.3d 220 (3d Cir. 2000) ....................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................... 6, 7, 8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................... 6, 7, 8, 9

*Burgess El v. Sanders*,
No. 5:22-cv-04367-JMG, 2023 U.S. Dist. LEXIS 192126
(E.D. Pa. Oct. 26, 2023) ....................16

*Conard v. Pennsylvania State Police*,
902 F.3d 178 (3d Cir. 2018) ....................11

*Conley v. Gibson*,
355 U.S. 41 (1957)....................6, 8

*Connick v. Myers*,
461 U.S. 138 (1983)....................10

*Curinga v. City of Clairton*,
357 F.3d 305 (3d Cir. 2004) ....................10

*Fenico v. City of Philadelphia*,
2024 U.S. Dist. LEXIS 195138, 2024 WL 4591798,
(E.D. Pa. Oct. 28, 2024) ....................10

*Gale v. Storti*,
608 F.Supp.2d 629 (E.D.Pa.2009)....................15

*Galli v. N.J. Meadowlands Comm'n*,

490 F.3d 265 (3d Cir. 2007) ....................13

*Green v. Philadelphia Hous. Auth.*,
105 F.3d 882 (3d Cir. 1997) ....................10

*Growth Horizons, Inc. v. Delaware County*,
983 F.2d 1277 (3d Cir. 1993) ....................17

*Hankin Fam. P'ship v. Upper Merion Twp.*,
No. 01-CV-1622, 2012 U.S. Dist. LEXIS 1467, 2012 WL 43599
(E.D. Pa. Jan. 6, 2012)....................15

*Hedges v. Musco*,
204 F.3d 109 (3d Cir. 2000) .................... 17, 18

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
480 F.3d 259 (3d Cir. 2007) ....................11

*Mann v. Palmerton Area Sch. Dist.*,
872 F.3d at 175 (3d Cir. 2017) ....................14

*McTernan v. City of York*,
564 F.3d 636 (3d Cir. 2009) ....................14

*Monell v. Dep't of Soc. Services*,
436 U.S. 658 (1978)....................14

*Mrazek v. Stafford Twp*.,
No. CV 13-1091(FLW), 2017 U.S. Dist. LEXIS 68893,
2017 WL 17886559 (D.N.J. May 5, 2017), aff'd, 744 F. App'x 69
(3d Cir. 2018)....................14

*Palardy v. Twp. of Millburn*,
906 F.3d 76 (3d Cir. 2018) ....................10

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .................... 6, 7, 8

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968)....................10

*Printing Mart v. Sharp Electronics*,
116 N.J. 739 (1989)....................18

*Rauser v. Horn*,
241 F.3d 330 (3d Cir. 2001)....................9, 11

*Rink v. Ne. Educ. Intermediate Unit 19*,
717 F. App'x 126 (3d Cir. 2017)....................11

*Rosembert v. Borough of E. Lansdowne*,
14 F. Supp.3d 631 (E.D. Pa. 2014)....................15

*Schuchardt v. President of the United States*,
839 F.3d 336 (3d Cir. 2016)....................7, 8

*United Mine Workers of America v. Gibbs*,
383 U.S. 715 (1966)....................18

*Watson v. Rozum*,
834 F.3d 417 (3d Cir. 2016)....................9, 10

**Statutes**

28 *U.S.C.* § 1367....................17

42 *U.S.C. § 1983*....................9

N.J.S.A. 10:6-1 to -2....................16

*N.J.S.A.* 59:1-1 to :12-3....................16

## STATEMENT OF FACTS

On May 16, 2023, after an eight-year career in the Town of West New York, New Jersey, plaintiff, Jorge E. Gomez, was fired from his position as recreation director (ECF No. 36, Amended Compl. ¶¶ 20). Defendants fired Mr. Gomez less than four hours after Mayor Sires and his slate of candidates assumed political control of West New York (Compl. ¶¶ 43, 44). Mr. Gomez was replaced by one of Mayor Sires' political cronies who had no experience running a municipal recreation program and less seniority than Mr. Gomez (Compl. ¶ 20).

On June 16, 2026, this Court entered an order (ECF No. 35) granting defendants' motion to dismiss plaintiff's complaint. That order dismissed the complaint without prejudice and provided plaintiff 30 days "to file an amended pleading that addresses the deficiencies identified in the accompanying Opinion." (Ibid.)

The deficiencies identified in the Court's opinion (ECF No. 34) were:

1. As to Count I alleging violations of 42 U.S.C. § 1983 by Mayor Sires, Baez, Diaz and Schweitzer, that;

a. plaintiff failed to show his job did not require political affiliation;

b. plaintiff failed to show his conduct was a substantial motivating factor in his termination; and,

c. the complaint did not adequately allege personal involvement among the defendants.

2. As to Count II alleging liability of the Town of West New York under Monell, that;

a. plaintiff did not adequately allege unconstitutional political affiliation discrimination (incorporating the Count I deficiencies noted above); and

b. plaintiff had not identified either:

i. the official with policymaking authority who terminated him; or,

ii. any other official policy or custom pursuant to which he was fired.

Plaintiff filed his first amended complaint as required by the Court's order. (ECF No. 36) A redline version of that document clearly demonstrates the rich factual background added to the initial pleading that more than addresses the Court's concerns. (Declaration of Leonard E. Seaman, Exhibit A).

The amended pleading demonstrates that Mr. Gomez was not a policymaker in the town. Rather his duties were limited to the "the day-to-day administration of recreational programs in the Town" and "administrative oversight of seasonal sports leagues operated by the Town such as baseball, soccer, football, cheerleading, and basketball, the Town's summer camp program, and staffing at the Town pool." (First Amended Compl. ¶ 15) He "was not required to and did not attend meetings of the

Board of Commissioners" (the Town's governing body). (First Amended Compl. ¶ 16)

He did not have any budgetary responsibilities and "was not consulted about, and did not provide any input or information to others for preparation of the Town budget. He did not participate in any important discussions about Town policy. He could not hire or fire Town employees. He could not speak for Commissioner Cirillo or other policy makers." (First Amended Compl. ¶17) "His position did not provide him with any meaningful input into the decision making concerning the nature and scope of any major program. Those decisions for the Department of Public Affairs were made by Commissioner Cirrilo. Once the nature and scope of any program was determined, Mr. Gomez was involved in administering and overseeing its operation." (First Amended Compl. ¶ 18).

He was not highly compensated when compared to other Town employees. The high end of the salary range for his position was less than that for positions like Clerk Keyboard I, Clerk Typist (DPW), Clerk Keyboard II, Clerk Keyboard Bilingual Spanish/English, and Clerk Bilingual Spanish/English and was substantially less than the salary available to the Town's Deputy Police Chief ($260,000 per year), Police Captain ($230,000 per year), Municipal Administrator ($220,000 per year), Police Director ($210,000 per year), Police Lieutenant ($210,000 per year), Clerk ($200,000 per year), Deputy Municipal Administrator

($200,000 per year), Town Clerk ($190,000 per year), Construction Official ($187, 500 per year), and Chief Financial Officer ($180,000 per year). (First Amended Compl. ¶14)

The amended pleading also demonstrates how defendants were aware of his political activity in supporting and actively campaigning for the loosing slate in the 2023 election. He was involved in the many political events, including at least one where we was seen by high level supporters of Mayor Sires. (First Amended Compl. ¶ 31) He regularly crossed paths with workers on Sires campaign. (First Amended Compl. ¶ 32) The Sires campaign accused Mr. Gomez of tampering with its campaign signs. (First Amended Compl. ¶ 33).

Moreover, on February 21, 2023, Mr. Gomez had an in person meeting with defendant, Schwitzer in connection with his change of title to a position protected under the Civil Service Act.

> During that in-person meeting, Mr. Gomez noted his support for Commissioner Cirillo in the upcoming election and his ongoing, active participation in the Cirillo campaign to Schwitzer. He expressed concern to Schwitzer that his political activity could result in retaliatory action against him by Sires and/or his supporters if Sires regained power in the town.

(First Amended Compl. ¶ 35). Schwitzer acknowledged those concerns. (*Ibid.*) Thus, Schwitzer had actual knowledge of plaintiff's political activity and his concern that he may suffer retaliation because of it.

Mayor Sires also had direct interaction that demonstrates plaintiff's participation in the campaign for his political opponent.

> During the early voting period for the 2023 election, Mr. Gomez was standing on the street with Commissioner Cirillo in front of the Cirillo campaign headquarters to greet voters on their way to a nearby polling place. Mayor Sires passed by on the other side of the street. He crossed the street, looked into the campaign headquarters, and then approached Commissioner Cirillo and Mr. Gomez and shook their hands before continuing on his way.

(First Amended Compl. ¶ 40)

The amended pleading also shows the personal involvement of each of the defendants. Schweitzer failed to take action she was ordered to take to change plaintiff's job title and hand delivered his termination letter. (First Amended Compl. ¶ 45). Baez signed that termination letter. (First Amended Compl. ¶ 46). On the date of his termination, Diaz was appointed as the Town's Director of Public Affairs and was the commissioner who oversaw his department. Under the Town's form of government detailed in the first amended complaint (First Amended Compl. ¶¶ 11-13), Diaz "was the only individual within the government of the Town with the power and authority to discharge Mr. Gomez or to direct someone—like Baez—to do so. (First Amended Compl. ¶ 47). Finally, both Diaz and Sires were the political candidates on the ballot who Mr. Gomez campaigned against. They retaliated against him because it served their political interests and solidified their power within the Town. (First Amended Compl. ¶ 48).

Thus, as to the *Monell* claim, the amended pleading specifically identifies three officials with policymaking authority responsible for terminating him, Mayor Sires, Commissioner Diaz, and Town Manager Baez.

## LEGAL ARGUMENT

### I. STANDARDS FOR A MOTION TO DISMISS UNDER *Fed. R. Civ. P.* 12(b)(6)

The Supreme Court has held that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint need not include "detailed factual allegations," and all well-pleaded allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly*, 550 U.S. at 555)). A complaint containing well-pleaded facts from which a plausible claim for relief can be inferred is not subject to dismissal on a motion under *Fed. R. Civ, P.* 12(b)(6). *Id.* at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

[1] "[T]he Supreme Court's emphasis on Rule 8's requirement of a 'showing' is new," but does not impose any additional requirements beyond that the pleading contain a "a short and plain statement of the claim and its grounds." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n.3).

570)). *Fed. R. Civ. P.* 8(a) does not impose a "probability requirement" on the plaintiff but merely requires that the complaint plead more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The Third Circuit has cautioned that the plausibility standard set forth in *Twombly* and *Iqbal* "does not impose a heightened pleading requirement, and that *Fed. R. Civ.P.* 8(a) continues to require only a 'showing' that the pleader is entitled to relief." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (citing *Phillips*, 515 F.3d at 233-34). Indeed, the *Twombly* Court expressly disavowed a heightened standard that would require the pleading of specific facts showing an entitlement to relief. *Twombly*, 550 U.S. at 569-70. "Implicit in the notion that a plaintiff need not plead 'specific facts' to survive a motion to dismiss is that courts cannot inject evidentiary issues into the plausibility determination." *Schuchardt*, 839 F.3d at 347 (citing *Twombly*, 550 U.S. at 556). Permitting a court to do so "would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment." *Id.* at 348 (citations omitted).

The Third Circuit has cautioned that the plausibility standard set forth in *Twombly* and *Iqbal* "does not impose a heightened pleading requirement, and that Federal Rule of Civil Procedure 8(a) continues to require only a 'showing' that the pleader is entitled to relief." *Schuchardt*, 839 F.3d at 347 (citing *Phillips*, 515 F.3d at 233-34). Indeed, the *Twombly* Court expressly disavowed a heightened standard

that would require the pleading of specific facts showing an entitlement to relief. *Twombly*, 550 U.S. at 569-70. "Implicit in the notion that a plaintiff need not plead 'specific facts' to survive a motion to dismiss is that courts cannot inject evidentiary issues into the plausibility determination." *Schuchardt*, 839 F.3d at 347 (citing *Twombly*, 550 U.S. at 556). Permitting a court to do so "would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment." *Id.* at 348 (citations omitted).

The Third Circuit has observed that the pleading standards set forth in *Twombly* and *Iqbal* require a three-step analysis. *Connelly*, 809 F.3d at 787. First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). Next, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, the court must assume the truth of the remaining well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Plaintiff's detailed Complaint more than satisfies these standards for well-pleaded, nonconclusory allegations of plausible claims for the relief asserted, and therefore satisfies the pleading standards established in *Twombly* and *Iqbal*.

## II. THE COMPLAINT PROPERLY PLEADS A CLAIM FOR FIRST AMENDMENT RETALIATION IN VIOLATION OF 42 *U.S.C.* § 1983 (FIRST COUNT)

To state a claim for First Amendment retaliation under 42 *U.S.C. § 1983*, a plaintiff must allege (1) that he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of the defendants; and (3) his constitutionally protected conduct was a substantial or motivating factor in the adverse action by the defendants. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001)).

"Insofar as workplace speech is concerned, the Supreme Court has long held that public employees only receive First Amendment protection from retaliation in the workplace when they speak out on a matter of public concern and their interest in speaking outweighs the government's interest in promoting workplace efficiency and avoiding disruption." *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social or other concern to the community,'" *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997) (quoting *Connick v. Myers*, 461 U.S. 138 (1983)); see also *Curinga v. City of Clairton*, 357 F.3d 305 (3d Cir. 2004) (quoting *Green*); *Fenico v. City of Philadelphia*, 2024 U.S. Dist. LEXIS 195138, 2024 WL 4591798, at *32

(E.D. Pa. Oct. 28, 2024) (differentiating matters of public concern from "purely private intraoffice grievance[s].").

"An adverse action is one 'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Watson* at 422, n.6 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)) (internal quotation marks omitted).

The third element can be established by allegations "of (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Allaha,* 229 F.3d at 424 (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Rauser*, 241 F.3d at 334.)) There is "no bright line rule" limiting the time that may pass between protected speech and illegal retaliation. *Conard v. Pennsylvania State Police*, 902 F.3d 178, 183 (3d Cir. 2018); see also *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 134 (3d Cir. 2017) (noting that temporal proximity inference is usually in the order of days or weeks). If the plaintiff meets these requirements, then the burden shifts to the defendant to prove by a preponderance of the evidence that he or she would have taken the same adverse action even if the plaintiff had not engaged in the protected activity. *Rauser*, 241 F.3d at 333.

Plaintiff has pleaded constitutionally protected activity through his speech and association in supporting the defendants' political opponents in the very election that

led to defendants' assuming political power in West New York. The complaint alleges the most severe adverse employment action. Plaintiff was fired for his political activity. Loss of a job is undeniably the sort of consequence that could dissuade political speech. Finally, the acts alleged happened in close temporal proximity to Mr. Gomez engaging in protected activity.

Plaintiff alleges the necessary temporal proximity because he establishes that defendants acted within hours of the moment they obtained the power to act and days after the election concluded. Defendants could not have fired Mr. Gomez until they controlled the levers of government. As soon as they got that power, the complaint alleges they used it.

Defendants' contention that the complaint fails to adequately plead that they had notice of Mr. Gomez's political activity must also be rejected. First, the complaint plainly and fairly alleges that they did (Compl. ¶ 19). Moreover, the activity alleged includes circulating petitions around town, knocking on neighbor's doors, displaying campaign signs at his home, and participating in campaign events (Compl. ¶ 17) in a contentious election in a geographically limited area. This is more than sufficient to support an inference that defendants knew about Mr. Gomez's political activity. See *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 275 (3d Cir. 2007).

Defendants are incorrect when they argue that the complaint lacks sufficient allegations against Mayor Sires or Commissioner Diaz. From the first amended complaint it is clear that when Sires and Diaz did not have political power, Mr. Gomez was a productive member of the workforce. Sires and Diaz campaigned for their offices and were opposed by plaintiff. As soon as Sires and Diaz achieved power, plaintiff was nearly immediately cast aside. The reasonable inference that can be drawn from the complaint is that Sires and Diaz were active and knowing participants in plaintiff's firing. In fact, the first amended complaint demonstrates that, at the time of his discharge, Diaz was the only official in the Town with authority to fire plaintiff. Either she did it, or his discharge was unauthorized and illegal.

Defendants' contention that Mr. Gomez held a policymaking role that justified his removal is not supported by the allegations in the first amended complaint. He was an administrator who implemented policy decisions made by others.

For the foregoing reasons, Count One of the complaint properly states a claim for violation of § 1983, and the motion to dismiss should be denied.

## III. THE COMPLAINT PROPERLY ASSERTS A CLAIM AGAINST THE TOWN OF WEST NEW YORK

Under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978) a municipality cannot be held liable solely because it employs an alleged tortfeasor, but "is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through

the implementation of a municipal policy or custom, causes a constitutional violation." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d at 175 (3d Cir. 2017); see also *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014); *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

*Monell* liability can be established on a single decision where the decision maker is a municipal policymaker. *Mrazek v. Stafford Twp*., No. CV 13-1091(FLW), 2017 U.S. Dist. LEXIS 68893, 2017 WL 1788655, at *9 (D.N.J. May 5, 2017), aff'd, 744 F. App'x 69 (3d Cir. 2018). The first amended complaint specifically identifies three officials with policymaking authority responsible for terminating him, Mayor Sires, Commissioner Diaz, and Town Manager Baez. (First Amended Compl. ¶¶46-48)

The *Monell* claim has been properly established, and the Town is not entitled to dismissal at this stage of the litigation.

## IV. PLAINTIFF HAS PROPERLY ALLEGED A CIVIL CONSPIRACY

Civil conspiracy occurs when two or more persons conspire to engage in illegal activity. To state a conspiracy claim, a plaintiff must "establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp.3d 631, 647 (E.D. Pa. 2014) (citing *Gale v. Storti*, 608 F.Supp.2d 629, 635 (E.D.Pa.2009)).

The Plaintiff must allege plausible facts concerning "(1) the period of the conspiracy; (2) the object of the conspiracy; and (3) certain actions of the alleged conspirators taken to achieve that purpose." *Hankin Fam. P'ship v. Upper Merion Twp.*, No. 01-CV-1622, 2012 U.S. Dist. LEXIS 1467, 2012 WL 43599, at *17 (E.D. Pa. Jan. 6, 2012); see also *Rosembert*, 14 F. Supp. 3d at 648 ("To withstand a motion to dismiss, a Complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefore."). "The agreement can be either express or implied. It can be proved by presenting testimony from a witness who heard the alleged conspirators discussing the agreement or the Plaintiff may present evidence of circumstances from which the agreement can be inferred." *Burgess El v. Sanders*, No. 5:22-cv-04367-JMG, 2023 U.S. Dist. LEXIS 192126, at *7 (E.D. Pa. Oct. 26, 2023)

The complaint here does all those things. It alleges the conduct that defendants violated plaintiff's rights through his discharge within hours of defendants' taking power. Any dismissal of the civil conspiracy allegations based on the New Jersey Tort Claims Act, *N.J.S.A.* 59:1-1 to :12-3 should be without prejudice to plaintiff's right to assert the claim following a motion for leave to file and serve a late notice of claim.

## V. EVEN IF THE COURT DISMISSES PLAINTIFF'S FEDERAL CLAIMS, IT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER HIS COMMON LAW AND STATE LAW CLAIMS

In the unlikely event that the Court dismisses plaintiff's federal claims in the first and second counts under § 1983 and *Monell,* it should not disturb the common law claim for civil conspiracy alleged in the third count or the claim under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 to -2. Those claims present distinct questions of New Jersey law and should be adjudicated by a New Jersey court if, as Defendants contend, the Court dismisses all claims over which it has original federal-question jurisdiction.

Under 28 *U.S.C.* § 1367(a), this Court may exercise supplemental jurisdiction over state-law claims that form part of the same case or controversy as claims within its original jurisdiction. However § 1367(c)(3) expressly provides that a district court "may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Third Circuit has repeatedly recognized that, where the federal claims are dismissed before trial, the ordinary course is to decline supplemental jurisdiction over the remaining state-law claims unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for retaining them. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284–85 (3d Cir. 1993).

The same result is warranted here. This case is at the motion-to-dismiss stage, before discovery has been completed and before the Court has expended substantial judicial resources adjudicating the merits of plaintiff's state-law claims. Consequently, considerations of judicial economy, convenience, fairness, and comity do not provide an affirmative justification for retaining jurisdiction. To the contrary, declining jurisdiction will permit the courts of New Jersey to decide claims arising under New Jersey's own civil-rights statute under and under its own pleading standards, *see Printing Mart v. Sharp Electronics*, 116 N.J. 739, 746 (1989), without requiring a federal court to resolve potentially unsettled or uniquely state-law questions. As the Third Circuit has recognized, federal courts should avoid "needless decisions of state law," particularly once the federal claims providing original jurisdiction have been eliminated. *Hedges*, 204 F.3d at 123; *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that defendants' motion to dismiss the first amended complaint should be denied.

s/ Leonard E. Seaman
RICHARD MALAGIERE
LEONARD E. SEAMAN
THE LAW OFFICES OF RICHARD MALAGIERE
A Professional Corporation
250 Moonachie Road, Suite 300A
Moonachie, New Jersey 07074
Tel. (201) 440-0675
rm@malagierelaw.com
les@malagierelaw.com

DATED: October 5, 2026